PEOPLE *v.* DOUD.

1. ASSAULT AND BATTERY—INTENT—EVIDENCE OF SECRET INTENT ADMISSIBLE.

In a prosecution for an assault, a secret intent not to inflict an injury wholly incompatible with a declared purpose to injure, accompanied by acts manifesting a corporal hurt to one immediately menaced thereby, may be told to the jury by the defendant.

2. SAME—INTENT A NECESSARY ELEMENT.

An assault must carry on the face of its attendant circumstances an offer or attempt with force or violence to do a corporal hurt to another, and this involves an intent to do a corporal hurt to another.

3. SAME—INTENT MAY BE FOUND FROM DEFENDANT'S ACTS.

In a prosecution for an assault it is not necessary that the prosecution go outside of the disclosed evidence of such intent and establish, by extrinsic proof, the intent entertained by the accused, since the intent may be found and usually is found from the acts of the accused and in the absence of a declaration of intention, or of evidence by the accused, must, if at all, be so found.

4. SAME—INTENT—FELONIOUS ASSAULT—STATUTES.

Intent is an element of a felonious assault with a dangerous weapon under 3 Comp. Laws 1915, § 15228.

5. SAME—TRIAL—INSTRUCTIONS ON QUESTION OF INTENT.

Where, in a prosecution for a felonious assault under 3 Comp. Laws 1915, § 15228, no instructions on the question of intent were given to the jury, the trial court was in error in refusing a requested instruction that the jury should determine what defendant's intention actually was, if able to, from the evidence in the case, considering what he did, what he said, and what he testified to as to his intent.

Pointing unloaded firearm as assault is discussed in notes in 15 L. R. A. (N. S.) 1272; 41 L. R. A. (N. S.) 181; 42 L. R. A. (N. S.) 975.

On right to use of deadly weapon in resisting trespass, see note in 22 L. R. A. (N. S.) 724.

The right of one to testify as to his intent is discussed in notes in 23 L. R. A. (N. S.) 367; 34 L. R. A. (N. S.) 323.

6. SAME—NOT NECESSARY TO SHOW WEAPON LOADED.

Where the assault charged was committed with a revolver, it was not necessary, under the statute, for the prosecution to show that the revolver was, in fact, loaded.

7. SAME—ASSAULT UPON TRESPASSERS WITH DANGEROUS WEAPON NOT EXCUSABLE.

The trial court was not in error in rejecting evidence that the persons whom defendant was charged with assaulting were trespassers, since no man may, in defense of his mere land against trespassers, assault them with a dangerous weapon.

8. SAME — EVIDENCE—ADMISSIBILITY—PERMIT TO CARRY WEAPON NO DEFENSE—INDEPENDENT OFFENSE.

The trial court was in error in permitting the prosecution to show that the records in the office of the county clerk did not disclose any permit granted to defendant to carry a revolver, since it would have constituted no defense if there had been a permit, and such evidence brought into the case an independent offense in no wise merely disclosed in the course of necessary proof of the charge laid.

Error to Mackinac; Shepherd (Frank), J. Submitted April 17, 1923. (Docket No. 121.) Decided June 4, 1923.

James Doud was convicted of an assault under 3 Comp. Laws 1915, § 15228, and sentenced to pay a fine of $200, or imprisonment for 6 months in the county jail. Reversed.

*Sprague & Shepherd,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *Homer H. Quay,* Assistant Attorney General, for the people.

WIEST, C. J. Defendant was convicted of the crime of making a felonious assault with a revolver upon one Albert Davenport, without intent to commit the crime of murder or to inflict great bodily harm less than the crime of murder, and was fined $200 and $50

costs with the alternative of 6 months' confinement in jail. The case is here by writ of error.

The incident leading to the conviction happened on Mackinac Island, and was occasioned by a dispute over the dividing line between defendant's land and land owned by the State of Michigan. Mr. Kenyon, State park superintendent, sent men to erect a fence upon what he claimed to be the line, and defendant, claiming they were on his land, ordered them off, and they left, but the next day returned in greater force and renewed their work. Thereupon defendant, armed with a revolver, went to where the men were working, as he claimed, to scare them off, and without intending to shoot. At the trial he testified that when he got about 25 feet from the men he held the revolver pointed down toward the ground and ordered them to leave and they complied. Albert Davenport testified that defendant pointed the revolver at him and said, "If I didn't get off while he counted three, he would shoot; so he counted two and I went off."

The charge was laid under section 15228, 3 Comp. Laws 1915, which provides:

"Whoever shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon, but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be deemed guilty of a felonious assault." * * *

Defendant contends that this statute involves an intent on the part of the accused to do a bodily hurt to another. This statute expressly negatives certain felonious intents, the purpose being to save the declared crime from falling within other defined felonies.

It is said the offense charged is one intermediate between simple assault and battery and assault with in-

tent to inflict great bodily harm less than the crime of murder (*People* v. *Warner*, 201 Mich. 547-557), and it is urged that:

"In every simple assault, there is a criminal intent, otherwise there is no assault.    'Malice or wantonness' is the basic essential and a man's intention must meet with his act in constituting a simple assault;" citing *People* v. *Carlson*, 160 Mich. 426; Tiffany's Criminal Law (How. 4th Ed.), p. 683.

In finding the defendant guilty the jury must have accepted the claim of the prosecution that defendant pointed the revolver at Mr. Davenport and made the threat claimed.    A secret intent not to inflict an injury, wholly incompatible with a declared purpose to injure, accompanied by acts manifesting a corporal hurt to one immediately menaced thereby, may, of course, be told to the jury by the accused, and such was permitted in this case, but the trial judge held that defendant's acts governed and not his secret intention.    An assault, under practically all definitions, must carry on the face of its attendant circumstances an offer or attempt with force or violence to do a corporal hurt to another.    This involves an intent or purpose to inflict a corporal hurt to another.    It is not necessary that the prosecution go outside of the disclosed evidence of such intent and establish, by extrinsic proof, the intent entertained by the accused. The intent to do an injury may be found and usually is found from the acts of the accused, and, in the absence of a declaration of intention, or of evidence by the accused, must, if at all, be so found.    The defendant, however, is at liberty to tell his purpose, even though contradicted by his every act, and have the same go to the jury.    Such is the law of simple assault.

Does the statute under which defendant was con-

victed change such rule and constitute it a crime to, point a revolver at another, accompanying the act with a threat of employment of its lethal power in case a demand made is not complied with, regardless of the intent of the aggressor? The statute speaks of an assault with a revolver or other dangerous weapon, and as the offense covered thereby was formerly punished as a simple assault, we must infer that, in the use of the term "assault" the legislature intended the same to carry its ordinary meaning in connection with crimes of offered violence. Evidently feeling that the penalty for simple assault did not meet occasions where a dangerous weapon was employed the legislature fixed a greater penalty for such aggravated assaults but did not eliminate the question of intent or purpose, involved in every case of assault of a criminal nature. Whether the statute in question raises the grade of the offense from former simple assaults or seeks to cover offenses not included within assaults with specific intents, we find it midway between offenses involving a purpose to exercise violence and assaults involving a felonious intent.

At the trial defendant was permitted to testify fully as to his intent and claimed he entertained no purpose to inflict injury. Even though such claim was refuted by his acts, demeanor and words, defendant had a right to go to the jury with what he claimed to have been his purpose. The trial judge gave the jury no instruction upon the issue of defendant's intent, although requested to do so, but charged:

"The people say that he pointed the gun at Davenport; and the people say that he pointed the gun under such circumstances as imported an intent to fire his gun off. The people do not say that he did intend to (it is not necessary that they should say it or prove it), but if he pointed a gun under such circumstances that Davenport had reasonable grounds to be-

lieve that he intended to fire it off, and it was pointed at Davenport at the time, then he is guilty of the offense charged."

While the fear of one assaulted, arising from reasonable apprehension of bodily hurt, threatened by another having means and ability to inflict the same, is mentioned in some of the books as proper evidence to go to the jury, we do not understand that such fear governs upon the question of the intent or purpose of an accused under this statute. We think defendant was entitled to have the following portion of his sixth request to charge given:

"As to what his intention actually was you must determine that, if you are able to, from the evidence in the case, considering what he did, what he said, and what he testifies to as his intent."

It is claimed that defendant intended no harm to the workmen and had the revolver for its moral effect, to scare them off his land; that the revolver was a borrowed one and he did not know whether it was loaded or not, and in the brief it is said:

"In the case at bar, the attention of the court is invited to the fact that there is no proof whatever that the revolver held by Doud was loaded. The only testimony on the point is that given by Mr. Doud himself, who testified that he did not know whether the gun was loaded or not.

"It has been held that there is no presumption that a revolver so used was loaded and that the burden of proof is on the State;" citing *State* v. *Napper*, 6 Nev. 113; *Price* v. *United States*, 85 C. C. A. 247, 156 Fed. 950 (15 L. R. A. [N. S.] 1272) ; *Fastbinder* v. *State*, 42 Ohio St. 341.

The authorities are not in harmony upon the subject of whether, in a prosecution for assault with a dangerous weapon, such as a revolver, the prosecution must establish that it was loaded at the time of its

employment. Without considering, except as herein stated, underlying statutes, if any, or specific intents involved in charges of assaults with firearms, we will take a view of the leading cases upon the subject.

In *State* v. *Godfrey*, 17 Or. 300 (20 Pac. 625, 11 Am. St. Rep. 830), the charge was, being armed with a Winchester rifle and making an assault and threatening to kill therewith if the person so threatened did not turn back. There was no direct evidence that the gun was loaded. It was held:

"To point an unloaded gun at another, at a distance of from thirty to seventy yards, whereby such other is put in fear, and flees, is not an assault with a dangerous weapon."

In *People* v. *Sylva*, 143 Cal. 62 (76 Pac. 814), it was held:

"The pointing of an unloaded gun at the prosecuting witness, accompanied by a threat to shoot him, without any attempt to use it otherwise, is not an assault with a deadly weapon, and cannot sustain a conviction for an assault for want of a present ability to commit violent injury upon the person threatened in the manner attempted."

In *State* v. *Napper*, *supra*, the court held that a conviction of an assault with a deadly weapon with intent to inflict a bodily injury could not be sustained because there was no allegation or proof that the gun which the defendant pointed at witness, and threatening to shoot, was loaded.

An examination of these cases discloses statutes requiring a showing of present ability on the part of an accused to do violence to the person of another.

In *Price* v. *United States*, *supra*, the accused, while engaged in an angry altercation with the complaining witness, without justification, and within shooting distance, drew a revolver and pointed it toward the

witness in a threatening manner, putting him in such fear that he got under a table for safety. The court held in substance that an assault with a dangerous weapon cannot be committed by pointing at another an unloaded pistol, although the person toward whom it is pointed does not know that the weapon is not loaded, and is put in fear by such act, but held that a simple assault might be so committed.

In *Fastbinder* v. *State, supra,* the defendant was charged with shooting at another with intent to kill. It was held:

"In order to convict of shooting with intent to kill, it must be averred and proved that the gun was loaded with powder and a bullet or some other destructive substance, which, when discharged from the gun, is calculated to produce death."

In *Commonwealth* v. *White,* 110 Mass. 407, it was held:

"If A. menacingly points at B. a gun which B. has reasonable cause to believe loaded, and B. is put in fear of immediate bodily injury therefrom, and the circumstances would ordinarily induce such fear in a reasonable man, A. is guilty of assault, although he knows that the gun is not loaded."

In *Beach* v. *Hancock,* 27 N. H. 223 (59 Am. Dec. 373):

"The defendant, being engaged in an angry altercation with the plaintiff, aimed a gun at him in an excited and threatening manner, and snapped it twice. It was not, in fact, loaded, but the plaintiff did not know whether it was loaded or not. *Held,* that the defendant had committed an assault."

In *State* v. *Shepard,* 10 Iowa, 126, defendant was indicted for an assault with a gun with intent to commit murder, and convicted of an assault. It was held:

"The pointing of a gun which is not loaded, in a threatening manner at another, constitutes an assault, when the party at whom it is pointed does not know that it is not loaded, or has no reason to believe that it is not."

In *State* v. *Smith,* 2 Humph. (Tenn.) 457, it was held that:

"If a person present a pistol at another, purporting to be loaded, so near as to have been dangerous to life, if the pistol being loaded, had gone off, it is an assault in law, though the pistol were not in fact loaded."

In *State* v. *Herron,* 12 Mont. 230 (30 Pac. 140, 33 Am. St. Rep. 576), the charge was an attempt to commit an assault with a deadly weapon. It was said by the court:

"It is not questioned but a loaded rifle is a deadly weapon. In this case a rifle was used. It was used with threats. The defendant said that he would blow Nelson's head off. He thus threatened to do that which he could do only if the gun were loaded. The gun could be used, as threatened to be used, only when loaded. Under these circumstances, on an information for an attempt, must the State prove that the gun was loaded, or is it a matter of defense to show the fact (if it be a fact) that there was no load in the gun? * * *

"Although there is a division of views in the decided cases, we think that the better opinion is that, if a firearm is the alleged deadly weapon—a weapon the only ordinary use of which is by its being loaded—if it be pointed at the complainant in a threatening manner, if defendant make threats to shoot, if the circumstances are such as would exist if one were using a loaded gun—in short, that if all the elements of the evidence be made out, as required by the criminal laws and procedure, except the direct, we may say visual, proof that the weapon is loaded— under these circumstances a direction to the jury to acquit is error; and the fact that the gun was unloaded

(if such be the fact) is a matter of defense. Such view seems to be held by the weight of authority, and such is the only practical view in the enforcement of the statute in reference to assaults with a deadly weapon of this character."

In *State* v. *Archer,* 8 Kan. App. 737 (54 Pac. 927), it was held:

"The pointing of a revolver which is not loaded in a threatening manner at another is an assault when the party at whom it is pointed does not know that it is not loaded, or has no reason to believe that it is not, and is by the act of the menacing party put in fear of bodily harm."

See, also, *McNamara* v. *People,* 24 Colo. 61 (48 Pac. 541) ; *State* v. *Cherry,* 11 Ired. (N. C.) 475.

Several of the cases last cited involved the rule with reference to simple assault and it is claimed on the part of the defendant that the rule applied in cases of simple assault has no application to assaults with a dangerous weapon. Having in mind the language of our statute, that it specifically forbids an assault with a revolver, and the evident reason underlying its enactment, and that it involves no intent or purpose beyond such as relates to simple assaults and raises the grade only when assaults are committed with designated forbidden weapons, we think the cases cited with reference to the rule in simple assaults are applicable. But beyond this we adopt the rule so well stated in the opinion of the Montana court. We, therefore, hold that it was not necessary for the prosecution to show that the revolver was, in fact, loaded.

At the trial defendant wanted to show, in justification of his acts, where the true line of the property was, and that the fence builders were trespassers. The trial judge declined to entertain the proposed issue, and we are urged to hold that this was error.

Suppose the fence builders were clearly shown to have been trespassers what effect would that fact have had upon the real issues? None. No man may, in defense of his mere land against trespassers, assault the invaders with a dangerous weapon. The law forbids such a menacing of human life for so trivial a cause. And the statute in question was enacted to prevent the use of dangerous weapons for the purpose of making assaults more effective through terror, and to prevent appeals to dangerous weapons as an arbiter in quarrels, brawls, and disputes. If defendant was clearly right as to the location of the line, this could not operate to free him of the charge or reduce his offense. As was well said in *Hairston* v. *State*, 54 Miss. 689 (28 Am. Rep. 392):

"A man has the legal right to protect his property against trespass, opposing force to force. If, therefore, the offer had simply been to commit a common assault, as by declaring he would strike with his hand, or with some implement or weapon not dangerous Hairston would have been guilty of no offense. If a man takes my hat, or offers to do so against my will, and I, drawing back my hand, declare that I will strike if he does not forbear, I only meet the trespass by an offer to use such force as may be appropriate and necessary. But I cannot at once commit an assault with deadly weapons, and a threat to kill. If I were to kill under such circumstances, the killing would be murder; and hence I have made an assault which, if carried into a battery with fatal results, would constitute the gravest crime. As no trespass upon property will primarily justify the taking of life, so an offer to commit a trespass cannot justify an assault with a deadly weapon, accompanied by a threat to kill unless the party desists. The means adopted are disproportioned to and not sanctioned by the end sought."

We are not concerned with the question of right to defend personal property against theft or wrong-

ful taking. Here the claimed trespassers could take nothing away, and in the end, if upon defendant's land, they would but have had their labor for their pains.

The authorities are uniform in holding that:

"In the application of the rule that a man may use such force as is necessary for the protection of his property, it must be noted that the principle is subject to this most important qualification, that he shall not, except in extreme cases, inflict great bodily harm or endanger human life." 2 R. C. L. pp. 555, 556.

This text of R. C. L. was taken from *Simpson* v. *State*, 59 Ala. 1, 14 (31 Am. Rep. 1), where it was also said:

"It is an inflexible principle of the criminal law of this State, and we believe of all the States, as it is of the common law, that for the prevention of a bare trespass upon property, not the dwelling-house, human life cannot be taken, nor grievous bodily harm inflicted. If in the defense of property, not the dwelling-house, life is taken with a deadly weapon, it is murder, though the killing may be actually necessary to prevent the trespass. The character of the weapon fixes the degree of the offense. But if the killing is not with a deadly weapon—if it is with an instrument suited rather for the purpose of alarm, or of chastisement, and there is not an intent to kill, it is manslaughter."

The trial judge was right in excluding the tendered issue of ownership of the premises. Such issue could have no bearing upon the charge laid. If defendant owned the land and the men building the fence were trespassers, this would not level the statute and permit him to assault such trespassers with a revolver. The courts are open for the redressing of wrongs, and no man may act as final arbiter in his own case involving a mere trespass and enforce his determination by use of a dangerous weapon. The

law will accept no such substitute for the orderly means provided for the settlement of boundary line disputes.

The prosecution was permitted to show, over objection, that the record in the office of the county clerk did not disclose any permit granted defendant to carry a revolver. This was error. It would have constituted no defense, if there had been such a permit. The prosecution did not have to negative such a permit. Defendant was not charged with carrying concealed weapons, and his guilt, if he made the assault, was the same whether he was licensed or not licensed to carry a firearm. This evidence brought into the case an independent offense in no wise merely disclosed in the course of necessary proof of the charge laid.

For the errors pointed out the conviction is reversed and a new trial granted.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.