## FISH v. PEOPLE OF STATE OF MICHIGAN.
### No. 6263.

Circuit Court of Appeals, Sixth Circuit.
Jan. 20, 1933.

W. G. Comb, of Detroit, Mich. (Gregory H. Frederick, of Detroit, Mich., on the brief), for appellant.

G. S. Fitzgerald, of Detroit, Mich. (Harry S. Toy, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

The prosecuting authorities of Wayne county, Mich., filed an information containing two counts against appellant and Walter Wesalowski. The count here relevant charged a violation of section 16747, Comp. Laws Mich. 1929. It averred that they, " * * * on the 21st day of July, A. D. 1931, on that part of Lake St. Clair lying within the limits of the State of Michigan and within the jurisdiction of said county as defined by section 1105, vol. 3, C. L. 1929, did jointly and severally assault one Arthur Gajeski with certain dangerous weapon, to wit: a revolver, but without intent to commit the crime of murder and without intending to inflict great bodily harm less than the crime of murder: Contrary to the form of the statute, etc."

Appellant and Wesalowski were United States Customs Patrol Inspectors and by virtue of section 33 of the Judicial Code, as amended by Act August 23, 1916, 39 Stat. 532, ch. 399, section 76, 28 U. S. C. (28 US CA §.76), and upon their application, the case was removed from the circuit court of Wayne county, Mich., to the United States District Court. Upon the trial a verdict was directed in favor of Wesalowski. Appellant was convicted of assault and battery. He challenges the denial of a directed verdict in his behalf. The statute upon which the indictment was based is printed in the margin.[1]

Under the law of Michigan (People v. Burk, 238 Mich. 485, 213 N. W. 717), a conviction for assault and battery may be had under an indictment for felonious assault upon the basis that the lesser offense is included within the more serious charge of felonious assault. Our only question then is, whether there was substantial evidence, which, if believed by the jury, would establish appellant's guilt.

[1] "Whoever shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon, but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be deemed guilty of a felonious assault, and upon conviction shall be punished. * * *" Comp. Laws Mich. 1929, § 16747.

On the evening of July 21, 1931, appellant and Wesalowski were assigned to patrol the waters along the shore of Lake St. Clair between Fisher Road and Ten Mile Road, Grosse Pointe, Wayne county, Mich. They were using a government patrol boat the better to apprehend smugglers, "rum runners," and others who might attempt to land contraband merchandise from Canada on to the United States shore. About 9:45 p. m. they were floating in the vicinity of Joy Dock when they discerned a speed boat approaching the dock. Shortly before its appearance three automobiles, only one of which carried lights, had entered the dock. Obviously the occupants of the speed boat became aware that it had been discovered, for it suddenly turned and fled down the river toward Detroit at full speed. Appellant and Wesalowski in the patrol boat immediately gave chase. They trained their spot light upon the speed boat, called to its occupants to stop, and used the siren of the patrol, which was within itself a signal to stop. These efforts being of no avail, appellant and Wesalowski opened fire with their pistols first as a warning to the speed boat to stop, and later, in an effort to puncture its gas tanks.

The speed boat headed toward the Canadian side, but being outdistanced, changed its course and zigzagged, evidently to escape the spot light, back toward the American shore. It passed the starboard of the Mamie O., a yacht which was cruising downstream toward Detroit in a course parallel to the American shore. A few hundred feet farther out in the lake and a short distance ahead of the Mamie O. and pursuing the same general course toward Detroit was the excursion steamer, Ste. Claire. As the speed boat reached the bow of the Mamie O., it cut in front of it with the patrol boat right behind it and zigzagged toward the stern of the Ste. Claire. There is substantial evidence tending to show that both boats came directly toward the Ste. Claire until the speed boat was within ten to twenty feet of its stern; that it then turned to the right and passed the Ste. Claire while not more than ten to twenty feet from it and that the patrol boat executed the same maneuver and passed the Ste. Claire not more than twenty-five or thirty feet away. There is evidence to indicate that as the two boats passed the Ste. Claire the speed boat was between the steamer and the patrol. Both boats crossed the bow of the Ste. Claire and were not again seen. There is evidence tending to show that there was firing from the patrol as it crossed the bow of the Mamie O. and that it continued until both boats dis-

appeared and that as the boats approached the Ste. Claire its stern was directly in the range of fire. Altogether about thirty shots were fired. Six of them were warning shots and the remainder were fired to disable the speed boat. Twenty-four of these shots were fired by appellant.

On the night in question the steamer Ste. Claire had been chartered for a moonlight excursion from Detroit up the Detroit river into Lake St. Clair and return. The boat was a two-decker and well lighted, and appellant admitted that it was easily seen. A dance had been in progress on the lower deck and during an intermission about two hundred people were standing around a refreshment stand in the stern. A number of them were leaning upon the rail of the lower deck on the starboard side near the stern and, having been attracted by the roar of the motors, were witnessing the chase of the speed boat by the patrol. Among this number was Arthur J. Gajeski. There is evidence tending to show that, just as the speed boat was approaching or passing the stern of the Ste. Claire, Gajeski was shot in the right arm as he leaned against the rail with his right arm resting thereon.

Appellant's contention is that he and Wesalowski, as Customs Patrol Inspectors, by virtue of section 581 of the Tariff Act of 1930 (19 USCA § 1581), were charged with the duty of hailing and stopping the speed boat and were authorized to use all necessary force to do so and that the shooting was within the scope of their authority and therefore lawful. We may assume without deciding that under unexceptional circumstances this proposition is correct.

■■ Appellant further points out that intent is a necessary element of the offense with which he was charged. This is also undoubtedly true. People v. Doud, 223 Mich. 120, 123, 193 N. W. 884, 32 A. L. R. 1535. Appellant submits therefore that he was entitled to a directed verdict upon the ground that the evidence not only failed to show that he intended to shoot Gajeski but that, upon the other hand, it affirmatively shows that the shot doing the injury was intended for the speed boat and by pure misadventure hit Gajeski, due to the ricochetting of the bullet. That appellant was entitled to a directed verdict we cannot concede.

Whether the shot that injured Gajeski was a misadventure, and excusable because occurring in the performance of duty, was preeminently a question for determination by the jury.

Further, we cannot say that a jury, if it believed the evidence introduced by the people, might not reasonably conclude that the act of shooting at the speed boat when the Ste. Claire was directly in the range of fire did not indicate such indifference toward the safety of its passengers as to supply the place of direct criminal intent. See Bishop on Criminal Law (3d Ed.) vol. 1, § 390. As stated by Mr. Bishop: "There is little distinction, except in degree, between a positive will to do wrong, and an indifference whether wrong is done or not." The jury evidently took this distinction into consideration because it found appellant guilty of the least offense embraced in the indictment. The law has regard for personal safety and human life and if one with reckless indifference to results injures another it holds him to have intended the consequences of his act and treats him as if he had done an intentional wrong.

The judgment of the District Court is affirmed.