PEOPLE *v.* WILLIAMS.

**1. CRIMINAL LAW—SEQUESTRATION OF WITNESSES—DISCRETION OF COURT.**

Sequestration of witnesses during the jury trial of a person charged with a crime is discretionary with the court.

**2. APPEAL AND ERROR—ABUSE OF DISCRETION—ELEMENTS.**

An abuse of discretion by a trial court in making a determination of fact requires the reviewing court to find that the result is so palpably and grossly violative of fact and logic, that it evidences not the exercise of will, but perversity of will; not the exercise of judgment, but defiance thereof; not the exercise of reason, but rather of passion or bias.

**3. CRIMINAL LAW—SEQUESTRATION OF WITNESSES—DISCRETION OF COURT.**

Denial by court of defendant's motion for sequestration of witnesses during his prosecution for crime of felonious assault where defendant anticipated important discrepancies in the testimony of the witnesses *held,* not an abuse of discretion (CL 1948, § 750.82).

**4. SAME—SEQUESTRATION OF WITNESSES—DISCRETION OF COURT.**

Denial of defendant's motion to sequester witnesses in trial on charge of felonious assault *held,* not an abuse of discretion, where the 2 police officers who responded to call of complaining witness for help were present at the commission of the offense, and the testimony of either officer does not appear to have been tailored to fit that of the other officer (CL 1948, § 750.82).

---

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 53 Am Jur, Trial § 31.
[5, 8] 6 Am Jur 2d, Assault and Battery §§ 34, 54.
Fact that gun was unloaded as affecting criminal responsibility. 79 ALR2d 1412.
[6, 7] 6 Am Jur 2d, Assault and Battery § 48 *et seq.*
[9] 6 Am Jur 2d, Assault and Battery § 211.
[10] 6 Am Jur 2d, Assault and Battery § 51.

5. ASSAULT AND BATTERY—FELONIOUS ASSAULT—DANGEROUS WEAPON
—UNLOADED SHOTGUN.

An unloaded shotgun is a dangerous weapon within the meaning
of the felonious assault statute (CL 1948, § 750.82).

6. SAME—PURPOSE OF STATUTE—FELONIOUS ASSAULT.

The purpose of the felonious assault statute is to punish those
who place another in a position of fear by use of a dangerous
weapon (CL 1948, § 750.82).

7. SAME—TRIAL—INSTRUCTIONS—FELONIOUS ASSAULT.

Instruction to jury by trial court in prosecution for crime of
felonious assault that it was not necessary to find that the gun
wielded by defendant was loaded *held,* correct (CL 1948, § 750-
.82).

8. SAME—INTENT—LOADED SHOTGUN.

The question of whether or not a shotgun was loaded in per-
petration of alleged crime of felonious assault is only relevant
insofar as it bears upon defendant's criminal intent or lack
thereof (CL 1948, § 750.82).

9. SAME—FELONIOUS ASSAULT—INTENT—EVIDENCE.

It is competent in a criminal prosecution for felonious assault
for the defendant to testify as to his actual intent, even
though it is inconsistent with his actions and words (CL 1948,
§ 750.82).

10. SAME—INSTRUCTIONS—INTENT.

Instruction to jury in prosecution for felonious assault that in con-
sidering the defendant's intent they could keep in mind "what
he did, what he said, and what he testified to as to his intent"
*held,* not erroneous (CL 1948, § 750.82).

Appeal from Calhoun; Ryan (Ronald M.), J.
Submitted Division 3 December 6, 1966, at Grand
Rapids. (Docket No. 1,372.) Decided March 28,
1967. Leave to appeal denied December 12, 1967.
See 379 Mich 791.

Burl Williams was convicted of felonious assault.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John M. Jereck,* Prosecuting Attorney, for the people.

*Charles A. Robison,* for defendant.

Holbrook, J.   The defendant was tried before a jury in the Calhoun county circuit court and was found guilty on July 8, 1965, of felonious assault in violation of CL 1948, § 750.82 (Stat Ann 1962 Rev § 28.277).

On March 19, 1965, the defendant's mother, Mrs. Elsie Williams, telephoned the Michigan State police post in Battle Creek and requested assistance regarding her son, the defendant.   At that time, Williams was devoting his attention to the systematic destruction of the furniture and windows in his mother's home.   In response to the call, Officers Alfred Bland and Wilbur Massey arrived at approximately 7 p.m., and, after conferring with Mrs. Williams, attempted to enter the kitchen door of the house.   There is no dispute in the testimony as to whether the officers knocked before entering, but in any event their welcome was of short duration.   Upon opening the door, Officer Bland saw the defendant standing behind a counter with a telephone in one hand and a shotgun in the other. The shotgun was pointed directly at the door through which the officers proposed to enter.   Williams said "back off."   When the officers attempted to open the door further, they were still confronted with the muzzle of the shotgun and the verbal warning was repeated.   At this point, the officers retreated.

Shortly thereafter the defendant appeared at the front of the house and voluntarily surrendered. The shotgun was found unloaded inside the house

and the defendant handed over to Officer Massey several unfired shotgun shells.

Defendant appeals his conviction and raises 2 questions for review hereinafter discussed.

1. *Did denial of the defendant's motion to seques-ter witnesses constitute reversible error?*

Immediately after the jury was sworn defense counsel made a motion to separate the witnesses. The reason given for the motion was that cross-examination of the witnesses was a very substan-tial part of the defendant's case in that defense counsel anticipated important discrepancies in the testimony of the people's witnesses. This motion was denied because the trial judge did not "really see the grave need for sequestration of witnesses."

It is well settled that sequestration of witnesses in a criminal trial is discretionary with the trial judge. *People* v. *Sawicki* (1966), 4 Mich App 467. In *People* v. *Hall* (1882), 48 Mich 482, 487 (42 Am Rep 477), the Supreme Court intimated by the fol-lowing language that perhaps sequestration should be granted as a matter of right.

"There is no difference of opinion among the authorities on the point that such a request, season-ably made, should not be refused. There is some difference as to whether such a refusal, standing alone, should necessarily be held illegal so as to require a reversal."

Subsequent cases, however, have consistently held that the issue is discretionary and not a matter of right. *People* v. *Burns* (1887), 67 Mich 537; *People* v. *Machen* (1894), 101 Mich 400; *People* v. *Considine* (1895), 105 Mich 149; *People* v. *Martin* (1920), 210 Mich 139; *People* v. *Kongeal* (1920), 212 Mich 307; *People* v. *Ring* (1934), 267 Mich 657 (93 ALR 993); *People* v. *Likely* (1966), 2 Mich App 458; *People* v. *Sawicki, supra.*

In *People* v. *Sawicki, supra,* "discretion" was defined in the following terms (p 473):

" 'The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' "

In the case at bar, an examination of the record reveals that the trial testimony of the two police officers was, except for minor variations, substantially the same as their testimony at the preliminary examination. It is true that both officers testified substantially as to identical facts and circumstances, but this does not support defendant's suggestion that each officer tailored his own testimony to fit that of the other. On the contrary, both witnesses were at the scene in the same place and at the same time and it would therefore be unusual if each made different observations. There being no reason to believe that either officer, unconsciously or otherwise, conformed his testimony to reiterate that of the other, an abuse of discretion has not been shown.

2. *Is a defendant who is charged with assaulting another with a gun [CL 1948, § 750.82 (Stat Ann 1962 Rev § 28.277)] entitled to an instruction requiring the jury to return a verdict of not guilty if the gun is found to be unloaded?*

The defendant requested the following instruction:

"I instruct you, ladies and gentlemen of the jury, that Burl Williams' act of pointing an unloaded shotgun, if you believe that to be a fact, at Alfred

T. Bland is not under our law the offense of aggravated assault as charged in the people's information. Unless Burl Williams was close enough to Alfred T. Bland to use his 12-gauge shotgun as a club, it must, in fact, have been loaded and pointed at Alfred T. Bland with the intent to do him corporal hurt in order to constitute the offense of felonious assault as I have defined it."

This request was denied and the court instructed the jury in the following manner:

"Now it isn't necessary for the prosecutor, the people, to show that the gun was in fact loaded. The pointing of a gun which is not loaded, and in a threatening manner at another, is an assault when the party at whom it is pointed doesn't know that it isn't loaded or has no reason to believe that it isn't, and is, by the act of the menacing party, put in fear of bodily harm. The law presumes that every sane person to intend the usual consequences which accompany the use of the means employed, and the manner employed and the intent to commit this particular offense may be inferred from the act itself. * * *

"Now when one deliberately uses a deadly weapon in a manner calculated to produce serious body injury, it is no defense that the party did not actually intend to produce an injury. As to what the defendant's intention actually was, you must determine that if you are able to, from the evidence in the case, considering what he did, what he said, and what he testified to as to his intent."

The crux of defendant's argument is that an unloaded shotgun is not a dangerous weapon within the meaning of CL 1948, § 750.82 (Stat Ann 1962 Rev § 28.277). The Michigan Supreme Court was faced with a similar question in *People v. Doud* (1923), 223 Mich 120, 129 (32 ALR 1535), where,

after reviewing authorities from other jurisdictions, it was said:

"Several of the cases last cited [an unloaded gun is a dangerous weapon] involved the rule with reference to simple assault and it is claimed on the part of defendant that the rule applied in cases of simple assault has no application to assaults with a dangerous weapon. Having in mind the language of our statute, that it specifically forbids an assault with a revolver, and the evident reason underlying its enactment, and that it involves no intent or purpose beyond such as relates to simple assaults and raises the grade only where assaults are committed with designated forbidden weapons, we think the cases cited with reference to the rule in simple assaults are applicable. But beyond this we adopt the rule so well stated in the opinion of the Montana court. We, therefore, hold that it was not necessary for the prosecution to show that the revolver was, in fact, loaded."

The simple assault cases cited in *Doud, supra,* which were held to be applicable, stated that an unloaded gun is a dangerous weapon. Aside from the reasoning of the court based upon the statute, there are also other apparent reasons for such a holding. From the standpoint of the person assaulted, his reactions are not predicated upon the fact of the gun being either loaded or unloaded. In either event, he is placed in a position of fear, and the purpose of the statute is to punish those who achieve this result by use of dangerous weapons. Another consideration is illustrated by the facts of the case at bar. The defendant claims that the weapon was unloaded, and indeed it was when the officers finally gained entry into the house. Without implying in any manner that such was actually the case, it would have been a simple matter for the defendant to merely remove the shells from the

gun while he remained in the house unobserved for a period of approximately two minutes. Under such circumstances it would be virtually impossible for the prosecution to show that the gun was loaded at the time of the assault.

Because of these factors, the trial judge did not commit error by instructing the jury that it was not necessary to find that the gun was loaded. The issue of whether the shotgun was loaded or unloaded is only relevant insofar as it bears upon the defendant's criminal intent or lack thereof. It is competent for the defendant to state his actual intent even though it is inconsistent with his actions and words. *People* v. *Doud, supra.* In the case at bar, the jury was instructed that in considering the defendant's intent, they could keep in mind "what he did, what he said, and what he testified to as to his intent." There was no error in the instruction.

Affirmed.

QUINN, P. J., and FITZGERALD, J., concurred.