PEOPLE v RAE

Docket No. 45197. Submitted June 11, 1980, at Lansing.—Decided
November 6, 1980.

James A. Rae was convicted of felonious assault and was sen-
tenced to jail, Alpena Circuit Court, Joseph P. Swallow, J. He
appeals, alleging that the trial court erred in finding that it
was not necessary to show that defendant had a specific intent
to put the victim in reasonable apprehension of an immediate
battery in order to find him guilty. *Held:*

The rule of law which requires that to make out a case of
simple criminal assault it must be shown that a defendant
intended to injure a victim or intended to put the victim in
reasonable fear or apprehension of an immediate battery, al-
though announced subsequent to defendant's trial, should be
applied retroactively. Consequently, the case is remanded for
additional findings of fact on the issue of specific intent.

Remanded.

1. ASSAULT AND BATTERY — SIMPLE CRIMINAL ASSAULT — TRIAL —
   JURY INSTRUCTIONS.

   A simple criminal assault is made out from either an attempt to
   commit battery or an unlawful act which places another in
   reasonable apprehension of receiving an immediate battery,
   and, during a trial for such an offense, the court should
   instruct the jury that to find a defendant guilty of simple
   criminal assault it must find that he intended to injure the
   victim or intended to put the victim in reasonable fear or
   apprehension of an immediate battery.

2. COURTS — NEW RULES OF LAW — RETROACTIVE APPLICATION.

   The factors which a trial court should consider in determining
   whether a new rule of law should be applied retroactively are
   the purpose of the new rule, the general reliance on the old
   rule, and the effect of applying the new rule on the administra-
   tion of justice.

REFERENCES FOR POINTS IN HEADNOTES
[1] 6 Am Jur 2d, Assault and Battery §§ 6, 50.
[2] 20 Am Jur 2d, Courts § 85.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Theodore O. Johnson,* Prosecuting Attorney (by *Mary C. Smith,* Assistant Attorney General, Prosecuting Attorneys Appellate Service), for the people.

*Derrick A. Carter,* Assistant State Appellate Defender, for defendant on appeal.

Before: T. M. BURNS, P.J., and BEASLEY and G. R. DENEWETH,* JJ.

PER CURIAM. Defendant, James Alexander Rae, was charged with felonious assault contrary to MCL 750.82; MSA 28.277. He was convicted on May 4, 1978, in a bench trial, and sentencing was delayed for a period of time not to exceed one year. Defendant was subsequently sentenced to 90 days in jail. He now appeals as of right.

The pertinent facts surrounding the charged offense are as follows.

While Sgt. James Roy of the Michigan State Police was on desk duty during the early morning hours of September 18, 1977, he received a telephone call from an unidentified man who stated that there was a dead man in the house across from the Maplewood Tavern. The call was traced to defendant's house, and Trooper Michael McMasters and his partner were dispatched to investigate.

Trooper McMasters went up to the front door of defendant's house and looked in the window. He saw defendant lying on a couch in the living room holding a revolver to his head. Defendant alternated between cocking and uncocking the gun.

When defendant started to exit from the house,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

McMasters walked toward him and called out to him. Defendant pointed the gun at him and called out, "Who is there?" McMasters identified himself as a state police officer, told defendant that he wanted to talk with him, and asked him to put the gun down. Defendant refused to put the gun down, but stated that he would not shoot McMasters. Defendant kept the gun pointed as McMasters approached. When McMasters asked defendant if they could sit on the porch and talk, the defendant put the gun, which McMasters could see was loaded, in his waistband. Defendant then told McMasters that he intended to kill himself because he had serious problems that he could not solve.

When defendant attempted to go back into the house, McMasters blocked the door. Defendant then said that he was going to go to the barn and kill himself. When McMasters said, "No," defendant stated that he was going to leave in his truck. He then cocked the gun and placed it to his own head. Before defendant pointed the gun at his own head, however, he waved it around and pointed it at McMasters. Defendant then drove away in his pickup truck, and McMasters followed him. Defendant returned to the house after driving for about a mile. Sometime after the defendant reentered the house, Sgt. Roy called and told the troopers that the defendant had said that they had better leave or someone would get hurt. Defendant exited from the house unarmed about five or ten minutes after Sgt. Roy's call and was placed under arrest.

The trial court, after indicating that the felonious assault statute forbids "the purposeful pointing of a gun at another person in a threatening manner", found that there had been "an intentional pointing of the gun by the defendant at Trooper McMasters on two occasions". The court

stated that it did not consider the initial pointing of the gun, before defendant knew who was outside, to be an assault. The trial court continued:

"But after that first initial pointing the court finds that there was [sic] at least two other actual pointings of the gun at the person of Trooper McMasters, as well as some time a waving of the gun in a manner that's obviously implied as a threat or in an assaultive nature. I mean the implication was clear. It was present.

"The fact that all the other police officers remained at bay, so to speak, lends further credence to my finding that the gun was utilized at the time and place in question in an assaultive manner."

With regard to the intent required for felonious assault, the trial court stated:

"So the statute forbids the purposeful pointing of a gun at another person in a threatening manner. It doesn't require intent to specifically do great bodily [harm] less than murder or any bodily harm. Doesn't require that intent. It's the use of a gun in a threatening manner.

"And, factually, whether it requires the pointing of a gun, it would appear it would not. It requires only the use of the gun in a threatening manner. Certainly some motion. Whether it requires a specific pointing, from the acts it's not clear to me.

\* \* \*

"My ruling again in reference to the cases that this is a statute that prohibits the utilization of guns in a threatening manner does not require a specific intent as I believe was the defendant's theory of the case. That specific intent has not been proven, but the court finds that specific intent is not required to constitute the crime that has been here charged."

Defendant raises only one issue on appeal. He contends that the trial court's finding that it was

not necessary to show defendant's specific intent constitutes reversible error.

The Michigan Supreme Court granted leave to appeal in *People v Ring* and *People v Joeseype Johnson*[1] to consider whether felonious assault includes a specific intent as an element. The people's proofs offered during trial in *Johnson* and at the preliminary examination in *Ring* tended to show that in each case the defendant pointed a gun at the complainant but no shot was fired. The defendants claimed that they had no intention to injure and that the jury must, therefore, be instructed that it could not convict unless it found such intent. The trial judge in *Johnson* refused to give a separate instruction on criminal intent for felonious assault but did instruct the jury that the prosecution must prove an intentional assault. In *Ring,* the trial court agreed to instruct the jury that intent to do bodily injury was a necessary element of felonious assault.

In a memorandum opinion issued subsequent to trial in the within case, the Supreme Court stated:

"A majority of the Justices are of the opinion that

"1) a simple criminal assault 'is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery', *People v Sanford,* 402 Mich 460, 479; 265 NW2d 1 (1978),

"2) the jury should be instructed that there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery,

"3) the instruction in *Johnson* was deficient in two respects: it failed adequately to inform the jury of the intent requirement and it' neglected to present the alternative 'reasonable apprehension of receiving an immediate battery' form of felonious assault; the jurors

---

[1] Both reported at 402 Mich 855 (1978).

in *Ring* should be instructed that defendant can be convicted if he intended to injure the victim or put him in reasonable apprehension of receiving an immediate battery.

"We reverse *Johnson* and remand for a new trial and affirm the trial court's decision in *Ring* as modified and remand for trial.

"*Johnson* did not raise an intoxication defense and the question whether assault or felonious assault are specific intent crimes for the purpose of the voluntary intoxication defense is not raised by the facts and has not been briefed or argued and is not before us; we intimate no opinion on that question."[2]

The memorandum opinion, which was signed by all seven Justices, was followed by three separate opinions. In the within case, the trial judge did not have the benefit of *Johnson.*

We note that, when the trial judge discussed specific intent, he referred only to the bodily harm aspect. Moreover, he found that there had been "intentional" pointings of the gun and that the gun had been handled "in a manner that's obviously implied as a threat or in an assaultive nature". Since it is not clear whether the trial judge considered the alternate form of intent, namely, "intent to put the victim in reasonable fear or apprehension of an immediate battery", we believe that there must be a remand to give the trial court opportunity to make further findings of fact and to apply the rule of *Johnson, supra.*

It may be argued that a remand is necessary only if the holdings in *Johnson* are to be applied retroactively. In *People v Hampton,*[3] the Supreme Court set out guidelines to be used in considering whether a decision should be applied retroactively.

---

[2] *People v Joeseype Johnson,* 407 Mich 196, 210; 284 NW2d 718 (1979).

[3] 384 Mich 669; 187 NW2d 404 (1971).

Three factors are to be considered: (1) the purpose of the new rule, (2) the general reliance on the old rule, and (3) the effect on the administration of justice.

The rule in *Johnson* involves the elements of the offense of felonious assault. The purpose of the intent requirement is to prevent a guilty verdict where the required mens rea is absent. The rule announced, therefore, very well may be determinative of guilt or innocence.

The extent of reliance on a rule contrary to that in *Johnson* is not clear. Prior Supreme Court cases did not clearly answer the question of whether felonious assault included specific intent as an element.[4] Decisions of this Court have been split as to whether specific intent is,[5] or is not,[6] an element of felonious assault.

If there was widespread reliance on the cases holding that felonious assault is not a specific intent crime, then the effect of retroactive application of the rule in *Johnson* on the administration of justice may be to overturn many felonious assault convictions where the jury had not been instructed on the particular intent required.

We believe that a balancing of the three factors set out in *Hampton, supra,* weighs in favor of retroactive application of the rule in *Johnson.* The fact that the rule may be determinative of guilt or innocence outweighs the possibility that there may have been general reliance on a rule contrary to that in *Johnson.*

---

[4] See, *People v Doud,* 223 Mich 120; 193 NW 884 (1923), *People v Burk,* 238 Mich 485; 213 NW 717 (1927), *People v Counts,* 318 Mich 45; 27 NW2d 338 (1947).

[5] *People v Crane,* 27 Mich App 201; 183 NW2d 307 (1970), *People v Dozier,* 39 Mich App 88; 197 NW2d 314 (1972).

[6] *People v Richard Johnson,* 42 Mich App 544; 202 NW2d 340 (1972), *People v Rohr,* 45 Mich App 535; 206 NW2d 788 (1973), *People v Clark,* 48 Mich App 645; 210 NW2d 906 (1973).

Consequently, in light of *Johnson,* we remand for additional findings of fact with regard to whether defendant had a specific intent to put the victim in reasonable apprehension of an immediate battery.

Remanded.