PEOPLE v JONES

Docket No. 85301. Submitted January 13, 1986, at Lansing.—Decided April 7, 1986.

Following a preliminary examination, the defendant, Ernest S. Jones, was bound over to the Washtenaw Circuit Court on a charge of felonious assault. Defendant subsequently filed a motion to quash the information, contending that the prosecutor failed to establish that the gun involved in this case was a dangerous weapon since it was inoperable at the time of the assault. At the time of his arrest, defendant possessed a sawed-off Crossman Model 180 pellet gun loaded with a live .22-caliber bullet. The circuit court, Henry T. Conlin, J., remanded the case to district court for further testimony on the operability of the weapon. A subsequent preliminary examination was then held. A firearms expert with the Michigan State Police testified that he had tested the gun to determine its operability. He testified that the gun was designed to fire .22-caliber pellets and that he determined after testing the gun that it was operable to discharge a .22-caliber bullet. He opined that the force of firing a live .22-caliber bullet would cause an explosion which would rupture the gun and discharge the bullet. Based on this testimony, the district court concluded that the pellet gun was a dangerous weapon. Following a bench trial in the circuit court, where the transcripts of both preliminary examinations and the police report were admitted into evidence by stipulation of the parties and where the defendant testified that the .22-caliber bullet was jammed in the gun, making it inoperable, the circuit court, Henry T. Conlin, J., concluded that the pellet gun was a dangerous weapon capable of propelling or exploding a bullet and found defendant guilty as charged. Defendant appeals. *Held:*

1. Case precedents indicate that defendant's pellet gun could be considered a dangerous weapon if it had been either properly loaded with a .22-caliber pellet or if it had been unloaded.

2. The pellet gun was a dangerous weapon because expert

REFERENCES

Am Jur 2d, Weapons and Firearms §§ 1, 2, 38.

See the annotations in the ALR3d/4th Quick Index under Air Guns and BB Guns; Weapons.

testimony established that it was operable when loaded with the proper ammunition and that it was capable of propelling the live .22-caliber bullet with the added danger of rupturing the gun. This was not a gun which was so out of repair or plugged that it was incapable of firing a shot.

3. The fact that the gun did not hold the .22-caliber bullet when the firearms expert received it for testing would not have affected the operability of the gun or the testimony of the expert.

Affirmed.

1. WORDS AND PHRASES — FIREARM.

The word "firearm", except as otherwise specifically defined in the statutes, shall be construed to include any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion (MCL 8.3t; MSA 2.212[20]).

2. CRIMINAL LAW — FELONIOUS ASSAULT — DANGEROUS WEAPONS.

A firearm which is incapable of firing a projectile does not constitute a dangerous weapon so as to support a conviction of felonious assault (MCL 8.3t, 750.82; MSA 2.212[20], 28.277).

3. CRIMINAL LAW — EVIDENCE — FELONIOUS ASSAULT.

The prosecution is not required to show that the defendant's revolver was, in fact, loaded when the defendant is charged with the crime of felonious assault (MCL 750.82; MSA 28.277).

4. CRIMINAL LAW — FELONIOUS ASSAULT — DANGEROUS WEAPONS — PELLET GUNS.

A pellet gun may be considered a dangerous weapon for purposes of the felonious assault statute where the gun is operable when loaded with the proper .22-caliber pellets and is capable of propelling a live .22-caliber bullet with the added danger of rupturing the gun (MCL 750.82; MSA 28.277).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*Gerald J. Van Wambeke,* for defendant on appeal.

Before: Gribbs, P.J., and D. E. Holbrook, Jr., and T. Roumell,* JJ.

T. Roumell, J. Defendant appeals as of right from his February 4, 1985, bench conviction of felonious assault, MCL 750.82; MSA 28.277. Defendant was sentenced on March 8, 1985, to incarceration in the county jail for a term of one year with credit for time served.

On the evening of April 13, 1984, the complainant was doing art work in her dormitory room located on the campus of Eastern Michigan University in Ypsilanti. At approximately 9:05 p.m., defendant entered her room through the open door. When the complainant noticed defendant and asked him what he was doing, he began to pull a pellet gun from underneath his jacket. When the complainant tried to grab the gun in an attempt to force it back into his jacket, defendant overpowered her, drew the gun and pointed it at her. Defendant pushed the complainant and she fell into the bathroom and slammed the door shut. She braced herself against the door and screamed for help.

Kellie Hiller was across the hall in another room when she heard screaming. She went into the hallway, where she saw defendant running from the complainant's room. Hiller chased defendant until she cornered him, but he pushed her away, drew the gun and aimed it at her. Hiller remained motionless until he fled.

Shortly after the assault, the police apprehended defendant in a local store. At the time of his arrest, defendant possessed a sawed-off Crossman Model 180 pellet gun, loaded with a live .22-caliber bullet. The complainant sustained a scratch on her hand and several bruises as a result of the assault.

* Circuit judge, sitting on the Court of Appeals by assignment.

At the preliminary examination on April 25, 1984, defendant was bound over to circuit court on a charge of felonious assault. Defendant subsequently filed a motion to quash the information, contending that the prosecutor failed to establish that the gun was a dangerous weapon since it was inoperable at the time of the assault. The circuit court remanded the case to district court for further testimony on the operability of the weapon. At the subsequent preliminary examination held on October 10, 1984, the only witness presented was Detective David Balash, a firearms expert with the Michigan State Police.

Detective Balash testified that he had tested the gun to determine its operability. He stated that the gun was designed to fire .22-caliber pellets and that he determined after testing the gun that it was operable to discharge .22-caliber pellets. He further testified that the pellet gun would be capable of firing a live .22-caliber bullet. He explained that the bore of the gun would accommodate a .22-caliber bullet and that if a person slid the gun's bolt forward with enough velocity the bolt would strike the rim of the bullet's cartridge, which was coated with a priming compound, and would detonate the bullet. He opined that this force could cause an explosion which would rupture the gun and discharge the bullet. He did not attempt to fire a .22-caliber bullet for safety reasons. Based upon this testimony, the district court concluded that the pellet gun was a dangerous weapon.

At the bench trial on February 4, 1984, the parties stipulated to the admission of the transcripts of both preliminary examinations and the police report. Defendant was the only witness, and testified that the bullet was jammed in the gun, making the gun inoperable. The circuit court con-

cluded that the pellet gun was a dangerous weapon capable of propelling or exploding a bullet and found defendant guilty as charged.

The sole issue on appeal is whether the pellet gun was operable at the time of the assault, and thus a dangerous weapon for purposes of the felonious assault statute, MCL 750.82; MSA 28.277.

In *People v Vaines,* 310 Mich 500, 505-506; 17 NW2d 729 (1945), our Supreme Court noted the distinction between weapons which are dangerous per se and those articles and instruments which become dangerous only when they are used as weapons, a distinction first made in *People v Goolsby,* 284 Mich 375, 378; 279 NW 867 (1938). The *Vaines* Court stated that daggers, metallic knuckles, pistols and similar articles, designed for the purpose of bodily assault or defense, are generally recognized as dangerous weapons per se. *Vaines, supra,* p 505.

In *People v Stevens,* 409 Mich 564; 297 NW2d 120 (1980), our Supreme Court reversed the Court of Appeals determination that a completely inoperable pistol could constitute a dangerous weapon so as to support a conviction of felonious assault. The *Stevens* Court turned to the definition of a firearm contained in MCL 8.3t; MSA 2.212(20) which provides:

"The word 'firearm', except as otherwise specifically defined in the statutes, shall be construed to include any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion, * * *."

In *Stevens,* the defendant committed an assault with the use of a starter pistol loaded with eight .22-caliber shells. However, the pistol could not fire because the firing pin had been filed down to

prevent firing and the barrel was bored out. Because the gun was incapable of firing a projectile, the *Stevens* Court concluded that it was not a dangerous weapon.

In *People v Doud,* 223 Mich 120, 128-129; 193 NW 884 (1923), our Supreme Court held that the prosecution is not required to show that a revolver is, in fact, loaded when a defendant is charged with felonious assault.

Under these authorities, defendant's pellet gun could be considered a dangerous weapon if it had been properly loaded with a .22-caliber pellet or if it had been unloaded. We conclude that the pellet gun was a dangerous weapon, because expert testimony established that it was operable when loaded with the proper ammunition and that it was capable of propelling the live .22-caliber bullet with the added danger of rupturing the gun. This is not a gun which was so out of repair or plugged that it was incapable of firing a shot. Compare, CJI 17:4:05.

Our decision is not affected by Detective Balash's testimony that the gun did not hold the .22-caliber bullet when he received it. Apparently, the bullet was removed earlier. The record does not disclose who removed it or when it was removed. We are convinced that this fact would not affect the operability of the gun or the testimony of Detective Balash.

Affirmed.