## King v. Commonwealth.

(Decided April 27, 1920.)

### Appeal from Perry Circuit Court.

1. Criminal Law—Instructions—Duty of Court to Instruct on Whole Law of Case.—Although not so requested to do, it is the duty of the trial court in a criminal case to instruct the jury on the

whole applicable law of the case, and the failure to do this will be prejudicial error.

2. Criminal Law—Instructions—Should be Confined to Issues Made by Evidence.—It is the duty of the court to instruct the jury upon every material issue that is supported by evidence, direct or circumstantial, sufficient to warrant the jury in considering it as a distinct issue in the case; but it is not the duty of the court to give an instruction upon an issue developed by counsel concerning which there is no evidence, direct or circumstantial, or reasonable inference that could be drawn therefrom.

3. Criminal Law—Instructions—No Eye-Witness to Killing Except Accused.—When there was no eye-witness to the killing except the accused, who testified that the deceased killed herself, and there was circumstantial evidence sufficient to show that he killed her, the court properly confined the instructions to murder, manslaughter, and accidental or intentional killing.

4. Criminal Law—Trial—Witnesses May Be Interrogated by Court.— The trial judge has the right to ask any witness a relevant and competent question, although he has no more right than counsel to ask irrelevant or incompetent questions; nor should he by the questions that he does ask, or in his manner of propounding them, indicate that he has any bias or prejudice one way or the other. It is not only the right, but the duty of the trial judge to interrogate witnesses, although his questions may result in developing evidence that would be prejudicial to one party and beneficial to the other.

EVERSOLE & TURNER for appellant.

CHARLES I. DAWSON, Attorney General, T. B. McGREGOR, Assistant Attorny General, and W. P. HUGHES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

Appellant, King, was indicted by the grand jury of Perry county for the murder of his wife, Amanda King, by shooting and killing her with a loaded pistol. When put upon a trial, he was found guilty by the jury of manslaughter, and his punishment fixed at confinement in the state penitentiary for a term of twenty-one years.

On this appeal, he asks a reversal of the judgment upon the grounds that: (1) the verdict was palpably against the weight of the evidence; (2) that the court erred in failing to instruct the jury as to the whole law of the case; (3) and that the conduct and statements of the trial judge during the trial and in the presence of the jury were prejudicial to the substantial rights of the accused.

It appears from the record that King and his wife, who were colored people, were married in October, 1917, and lived together as man and wife at Hazard, Perry county, until her death on the 23rd day of February, 1919. King had been working in Hazard from the time of his marriage until about February 17, 1919, when he went to Lexington, remaining there about a week, when he returned to Hazard on the 23rd, in response to a letter written him by his wife, who remained at Hazard.

It further appears from the evidence for the Commonwealth that when King arrived at Hazard, he went first to the pressing or barber shop of Dan Dorum, at which place he had worked before going to Lexington, and there he and two or three others drank some whiskey that he had brought with him from Lexington. His wife was at the place of Dorum when he got there, but she left within a few minutes afterwards.

Soon after she left, King went to his residence, expecting to find his wife there, but not doing so went to the residence of one Miller, who lived nearby, where he found her and together they came back to their home. Very shortly after this a pistol shot was heard, and almost immediately King came to Dorum's door, saying that he wanted to call a doctor as his wife had shot herself.

When the doctor came within a few minutes he found that Amanda King had been fatally wounded, and she died shortly after the arrival of the doctor without making in his presence or that of any other person any declaration or statement.

The evidence for the Commonwealth further shows that King on his way from the railroad depot to Dorum's shop inquired where his wife was, and upon being told by someone that she was probably at his house, he said: "I am going to find out where she is at, and if I can't live with her by God nobody else can." Another witness testified that he said in the barber shop of Dorum, in response to the suggestion that he had a good wife and should take her home, that: "When I leave here this damn court house will be painted in blood, and I ain't here for no long time." When he went to the house of Miller to inquire if his wife was there, he said, after having called for her, that: "I want to see her, she is my wife and I have paid and bought her." Another witness testified that he saw a pistol in the hip pocket of King, saw

him take it out of his pocket and put it in his pants pocket up under his vest, and the pistol found in the room where his wife was killed was identified as the pistol that King had transferred from one pocket to another.

Other witnesses for the Commonwealth said that when King came out of his house after the pistol shot was fired, he said: "Oh, my wife, my wife, I didn't mean to do it, Lord have mercy, Lord have mercy" "he didn't mean to do it;" "my wife shot herself, Lord have mercy on a poor widow's son, I wouldn't have done it for anything in the world."

It might be further said that during the trial, a letter was introduced purporting to have been written by his wife to him, in which she said, in substance, that she had killed herself. The evidence concerning this letter, the time when it was written, who wrote it and the manner in which it was found, as well as other circumstances connected with it, are so contradictory, confusing and unsatisfactory as to leave the impression that it was a forgery. It should also be said that there was some evidence conducing to show that his wife believed that King had another wife and children, and that King suspected that improper relations existed between his wife and Dorum.

Testifying in his own behalf, King denied that he had any pistol on his person at any time after his return to Hazard, or before his wife was killed, or that he made any of the statements attributed to him by the witnesses for the Commonwealth, except that his wife had shot herself.

Further testifying in his own behalf, King, in relating the circumstances immediately preceding and attending the death of his wife, said that when he got off the train at Hazard, he went to the barber shop of Dorum where his wife was, and after he had said a few words to her and kissed her, she walked out the door leaving him in the room, and after she left he and some of the others there drank what whiskey he had; that he did not have any pistol in his possession; that after staying in the shop of Dorum a little while, he went to his house where he thought his wife had gone, but as she was not there he went to the house of Miller where he found her, and together they came back to his house; that he remained in the front room and she went into

the kitchen and appeared to be writing something, but in a little while came in the room where he was and said something to him about a rumor that she had heard that he had another wife and children; that while he was standing in the front door, he heard a shot fired in the room and turning around found his wife with the pistol in her hand, sitting on the bed; that he then ran for the doctor; that he was in love with his wife and did not shoot or kill her; that the pistol was her pistol.

The direct evidence that we have related clearly and convincingly shows that the wife of King either intentionally or accidentally shot and killed herself, while the circumstantial evidence leaves the conviction that he intentionally shot and killed her. But whichever theory may be accepted, it cannot be doubted that there was ample circumstantial evidence to authorize the jury to find King guilty of either murder or manslaughter. The verdict is not palpably or at all against the weight of the evidence.

Coming now to the instructions, the court instructed the jury upon the subjects of murder and manslaughter and also told them that if they believed "from the evidence in this case that the shot that took the life of Amanda King was fired by her, either accidentally or intentionally, then the jury will acquit the defendant."

No complaint is made of the instructions given, which correctly submitted to the jury the issues set forth in the instructions, but it is insisted that the court should have further instructed the jury on the subjects of involuntary manslaughter and self-defense, although no instructions on these subjects were offered by counsel for King.

The failure, however, of his counsel to offer instructions on the subjects indicated is not so material, because it is the duty of the trial court in a criminal case to instruct the jury whether requested so to do or not upon the whole applicable law of the case. Therefore, if King was entitled to instructions on the subjects of self-defense or involuntary manslaughter, or either of them, the failure of the court to so instruct would be prejudicial error. Gordon v. Com., 136 Ky. 508; Thomas v. Com., 146 Ky. 790; Buckles v. Com., 113 Ky. 795.

It is, as we have said, the duty of the trial court in a criminal case to instruct the jury upon the whole law applicable to the facts of the case under investigation, but what is the whole applicable law depends on the facts

and circumstances of the case. In other words, it is the duty of the court to instruct the jury upon every material issue that is supported by evidence, direct or circumstantial, sufficient to warrant the jury in considering it as a distinct issue in the case. This is as far as the rule goes. It would be an idle as well as an absurd thing to give an instruction upon an issue developed by counsel concerning which there was no evidence, direct or circumstantial, or reasonable inference that could be drawn therefrom. It is elementary that the law applicable to the case depends on the facts and circumstances developed in the evidence, and it would be as great an error on the part of the trial court to give an instruction on a subject totally unsupported by evidence as it would be to fail to give an instruction on an issue that was supported by evidence. Stanley v. Com., 184 Ky. 237; Hunter v. Com., 171 Ky. 438; Lewis v. Com., 140 Ky. 652; Minnard v. Com., 158 Ky. 210; Steely v. Com., 129 Ky. 524; Anderson v. Com., 144 Ky. 215; Bast v. Com., 124 Ky. 747; Gamble v. Com., 151 Ky. 372; Curtis v. Com., 169 Ky. 727.

Before the statute allowing a defendant in a criminal case to testify in his own behalf, it was held in several homicide cases that if there was no eye-witness to the killing, except the accused, or circumstantial evidence sufficient to establish with reasonable certainty how it occurred, the court should instruct the jury upon every possible feature of the case, such as self-defense, involuntary manslaughter and accidental killing; and, perhaps since the defendant has been allowed to testify in his own behalf, a few isolated cases may be found adhering to the old rule, but of late years the court has consistently followed the sensible practice that no instruction should be given in any case unless there is some evidence, direct or circumstantial, to support it.

Applying these briefly stated principles to the case we have, it is perfectly plain that there was no evidence whatever of any kind or character presenting the issue of self-defense or that would authorize an instruction on the subject of involuntary manslaughter. There was no eye-witness to the homicide except the accused King. He was the only person who could or did describe what happened, and his evidence leaves no possible room for doubt or speculation that Amanda King shot and killed herself, either accidentally or intentionally. The jury,

however, was not bound to accept nor did they accept his version of the killing, as there were other facts and circumstances amply sufficient to establish that he shot and killed his wife. These facts and circumstances the jury had the right to weigh and consider in connection with his exculpating statements, and determine for themselves whether his wife killed herself or she was killed by him.

Under all the facts and circumstances, he was either guilty of murder or manslaughter or had not committed any offense. The issue presented to the jury was a very simple one and the court gave the whole law applicable to the case.

It is further complained that error was committed by the trial court in interrogating witnesses. This alleged error consists in the fact that during the trial, the trial judge asked witnesses a number of questions for the purpose of developing facts that appeared to him and that were competent and pertinent.

We have carefully examined the record and do not find that the judge, in the interrogation of witnesses, abused his sound discretion. The trial judge has the right, as much so as counsel on either side of the case, to ask any witness a relevant and competent question, although, of course, he has no more right than counsel to ask irrelevant or incompetent questions, nor should he by the questions that he does ask, or in his manner of propounding them indicate that he has any bias or prejudice one way or the other.

It often happens in the trial of a case that the judge, who occupies an impartial attitude, may be of great assistance to the jury in asking questions that will develop the truth of the case, and this it is not only his right but his duty to do, even though questions asked may result in developing evidence that would be beneficial to one party and prejudicial to the other.

It also sometimes happens that counsel on one side of the case may fail to ask questions that would be helpful to the jury in reaching a just conclusion for fear that the answers to such questions might be prejudicial to their side, and then again it may occur that counsel, without so intending, will overlook or forget to ask a question or questions that he wanted to ask.

But however this may be, and without reference to the desires or purposes of counsel, the trial judge, in the

interest of justice and to the end that a trial fair to both parties may be had, may in an impartial manner, free from any evidence of bias, ask such questions and as many as he pleases as are relevant and competent.

Upon the whole case, we are convinced that the defendant had a fair trial, and the judgment is affirmed.