PEOPLE v. KEYS.

OPINION OF THE COURT.

1. INDICTMENT AND INFORMATION—INDORSEMENT OF WITNESSES.

The prosecuting attorney is required, by statute, to file an information with the court having jurisdiction of an offense after a proper return is filed by the examining magistrate, indorsing thereon the names of witnesses known to him at the time of filing, but names of additional witnesses may be indorsed before or during the trial by leave of court and upon such conditions as the court shall determine (CLS 1961, § 767.40).

2. SAME—RES GESTAE WITNESSES—INDORSEMENT.

The indorsement of an additional *res gestae* witness after an information has been filed is, under the statute, solely a matter of judicial discretion, where it is not shown that the prosecuting attorney knew of the additional witness at the time of filing the information (CLS 1961, § 767.40).

REFERENCES FOR POINTS IN HEADNOTES

[1–6] 21 Am Jur 2d, Criminal Law § 328; 27 Am Jur, Indictments and Informations §§ 43, 150.
[7, 10–12] 6 Am Jur 2d, Assault and Battery § 69 *et seq.*
[8, 9] 5 Am Jur 2d, Appeal and Error § 623.
[13] 5 Am Jur 2d, Appeal and Error § 890.
[14, 15] 53 Am Jur, Trial § 650.

3. SAME—RES GESTAE WITNESS—JUDICIAL DISCRETION—BURDEN OF PROOF.

Indorsement of the names of additional witnesses after the filing of an information is wholly within the discretion of the court, which must be exercised with due regard to protection of an accused's right to prepare his defense and to be accorded a fair trial, the ultimate question, on review, being whether the court abused its discretion, with the burden ordinarily on the party asserting such abuse (CLS 1961, § 767.40).

4. CRIMINAL LAW—INDORSEMENT OF RES GESTAE WITNESS—DISCRETION OF COURT.

Conviction of felonious assault need not be reversed for failure of the prosecutor to call and indorse an alleged *res gestae* witness, where the record indicates that defendant made no statement to the prosecuting attorney, preliminary examination was waived, prosecutor had no knowledge of the existence of the alleged *res gestae* witness until late in the trial, testimony as to the presence of the witness was conflicting, and defendant knew of the presence of the witness long before trial, and while basing his entire defense thereon, made no motion for indorsement of the witness on the information, since, by statute, the indorsement of additional witnesses after the information has been filed is a discretionary matter for the trial court, and it was not an abuse of discretion under the circumstances for the court to fail to order the indorsement (CL 1948, §§ 750.82; CLS 1961, § 767.40).

5. SAME—INDORSEMENT OF RES GESTAE WITNESS—WAIVER.

Defendant convicted of felonious assault *held,* to have waived the people's failure to call an alleged *res gestae* witness, where such waiver was expressly made in open court through counsel (CL 1948, § 750.82; CLS 1961, § 767.40).

6. INDICTMENT AND INFORMATION—INDORSEMENT OF RES GESTAE WITNESS—DISCRETION OF COURT.

It was not an abuse of discretion for the trial court to fail on its own motion to order that an alleged *res gestae* witness be indorsed upon the information, where the record does not affirmatively establish that the prosecutor had any knowledge of the identity of the witness until late in the trial, testimony is inconclusive as to whether he was, in fact, a *res gestae* witness, defendant made no motion to have the witness indorsed on the information although his entire defense was based on the presence of the witness, and the defendant could, but did

not, subpoena the witness to testify on his behalf (CLS 1961, § 767.40).

7. Same—Felonious Assault—Instructions—Self-Defense.

Claim by defendant, whose defense to a charge of felonious assault upon one person was that he fired his revolver in an attempt to defend himself against knife attack by another person, that the trial court committed reversible error in instructing the jury that self-defense was not an issue in the case *held*, without merit, where the court instructed the jury that they must acquit defendant unless they found, beyond a reasonable doubt, that he pointed and fired a loaded revolver at the person named in the information with the intent to shoot or hurt that person, since such instruction required a verdict of not guilty if he did not shoot at the person charged regardless of whether defendant was attempting to defend himself against another (CL 1948, § 750.82).

8. Appeal and Error—Criminal Law—Instructions—Objections.

A party may not assign as error the giving or failure to give an instruction unless he objects before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection (GCR 1963, 516.2).

9. Same — Criminal Law — Instructions—Self-Defense — Failure to Object.

Claim of defendant, whose defense to a charge of felonious assault upon one person was that he was attempting to defend himself from a knife attack by another person, that the trial court committed reversible error in instructing the jury that self-defense was not a proper issue in the case *held*, not properly before the Court of Appeals, where the record reveals that defendant not only failed to object to the instructions, but, after inquiry from the court, also specifically stated that he had no requests or remarks to make with respect to the court's charge (CL 1948, § 750.82; GCR 1963, 516.2).

DISSENTING OPINION.

LEVIN, J.

10. Criminal Law—Felonious Assault—Self-Defense.

*The gist of "self-defense" as a defense to a charge of felonious assault is the claim that the defendant's actions were justified under the circumstances in which he acted (CL 1948, § 750.82).*

11. SAME—FELONIOUS ASSAULT—SELF-DEFENSE.

  *Self-defense as justification in a prosecution for felonious assault does not require an admission by the defendant that he committed the felonious assault by firing a gun at complaining witness, because defendant could be convicted of felonious assault without proof that he fired at all or proof that he fired in the direction of the complaining witness (CL 1948, § 750-.82).*

12. SAME—FELONIOUS ASSAULT—SELF-DEFENSE—INSTRUCTION.

  *Instruction to jury that self-defense could not be asserted in prosecution for felonious assault because the defendant denied shooting in the direction of the complaining witness was incorrect (CL 1948, § 750.82).*

13. SAME—INSTRUCTIONS—PRESUMPTIONS.

  *Presumption is that the jury followed the erroneous instruction, where conflicting instructions are given, one erroneous and the other correct.*

14. SAME — INSTRUCTIONS — ESSENTIAL INGREDIENT — REQUEST TO CHARGE.

  *A charge to the jury in a criminal case which omits a legally essential ingredient may constitute reversible error, even though the defendant has not requested a correct instruction (CL 1948, § 768.29).*

15. SAME—INSTRUCTIONS—FELONIOUS ASSAULT—SELF-DEFENSE.

  *Failure of trial judge to charge the jury correctly on the issue of self-defense was error in case where the crux of the entire defense was whether the defendant's admitted show of force in firing of a shot was justified, and the judge had the duty to charge the jury correctly without regard to whether there was a request for a correct charge on the issue (CL 1948, §§ 750.82, 768.29).*

Appeal from Recorder's Court of Detroit; Krause (Paul E.), J. Submitted Division 1 April 4, 1967, at Detroit. (Docket No. 2,008.) Decided March 19, 1968. Rehearing denied May 31, 1968.

John Keys was convicted of felonious assault. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Perdue, Burton & Holliday,* for defendant.

Vander Wal, J. Defendant was charged with felonious assault on Clayton Richardson with a revolver contrary to CL 1948, § 750.82 (Stat Ann 1962 Rev § 28.277). The source of the dispute was defendant Keys' intimate personal relationship with Jo Anne Julian, daughter of Elizabeth Richardson by a previous marriage and wife of Dallas Julian. Jo Anne's family apparently did not approve of her relationship with defendant Keys.

At trial there was conflicting testimony as to who was present when the shot was fired. According to Clayton Richardson, complaining witness and stepfather of Jo Anne Julian, the gun, immediately before it was fired, was aimed directly at him. Richardson's testimony was substantially corroborated by that of two *res gestae* witnesses, his wife Elizabeth and his daughter-in-law, Juanita Marlow, the wife of Raymond Marlow.

Defendant Keys testified that he fired the revolver into the air on the driver's side of his automobile in order to defend himself against Raymond Marlow, the son of Elizabeth Richardson by a previous marriage and stepson of the complaining witness. Defendant's story that Raymond was approaching with two butcher knives in his hands was supported by the testimony of Brenda McCullough who was seated beside defendant Keys in his automobile when the shot was fired. Her testimony was that the shot was fired across her and out the window on her

side of the automobile, but that it was fired into the air rather than directly at anyone.

The case was tried on two diametrically opposed theories. The people claimed that the assault was made upon one Clayton Richardson and the defense claimed that no assault was made upon Richardson, but that if an assault was made, it was made upon one Raymond Marlow and in self-defense.

On appeal the defendant seeks reversal of the trial court judgment and either a new trial or a court order for the entry of a verdict of not guilty. Appellant raises two issues for our consideration:

1. Did the prosecutor's failure to indorse and call Raymond Marlow as a *res gestae* witness deny the accused his right to be protected against false accusation?

2. Did the trial court err in instructing the jury that the defense of self-defense was not available to the appellant?

The legislature has spoken concerning the first issue.

"All informations shall be filed in the court having jurisdiction of the offense specified therein, after the proper return is filed by the examining magistrate, by the prosecuting attorney of the county as informant; he shall indorse thereon the names of the witnesses known to him at the time of filing the same. The information shall be subscribed by the prosecuting attorney or in his name by an assistant prosecuting attorney. Names of additional witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine." CLS 1961, § 767.40 (Stat Ann 1965 Cum Supp § 28.980).

Defendant made no showing on the record that the prosecuting attorney at the time of filing the information knew that Raymond Marlow was a *res*

*gestae* witness. It is clear from the statute, there-
fore, that the indorsement of Raymond Marlow as a
*res gestae* witness after the information was filed
was solely a matter of judicial discretion. We quote
the controlling case of *People* v. *McCrea* (1942), 303
Mich 213, 272: "The test to be applied in the present
case is whether the trial court abused its discretion
in ordering the names of certain witnesses, alleged
to be *res gestae* witnesses, to be indorsed on the in-
formation after filing." The Court in that case quot-
ed with approval *People* v. *Blue* (1931), 255 Mich
675, 678 to the following effect:

" 'Under the code, *the indorsement of names after
filing is wholly within the discretion of the court.*
The discretion, of course, is judicial, not personal,
must be exercised with due regard to protection of
the right of an accused to prepare his defense and
to be accorded a fair trial, and is to be reviewed upon
the showing made and in view of the circumstances.
* * * The ultimate question, on review, *is whether
the court abused its discretion,* with the burden ordi-
narily on the party asserting abuse.' " (Emphasis
added.)

See, also, *People* v. *Jackson* (1947), 318 Mich 506,
509 and *People* v. *Tamosaitis* (1928), 244 Mich 258,
261.

Defendant in the instant case fails in his burden
of showing an abuse of judicial discretion. It ap-
pears from the record that defendant Keys made no
statement to the prosecuting attorney and waived
preliminary examination. The prosecutor learned of
the presence of Brenda McCullough at the scene only
after the trial had begun. In his opening statement
defense counsel did not mention Raymond Marlow's
name and failed to make a motion for his indorse-
ment as a witness at any time during the trial. The
first 2 witnesses for the prosecution did not testify
to facts placing Raymond Marlow at the scene.

There is nothing on the record to indicate that the prosecuting attorney and the court did not learn of Raymond Marlow for the first time late in the trial when Juanita Marlow testified that Raymond Marlow had gone to the Julian home also. Brenda McCullough testified that defendant Keys was defending himself against Raymond Marlow.

After defendant Keys also testified to facts placing Raymond Marlow at the scene, the prosecutor and the court were faced with conflicting testimony upon which a conclusion of fact was to be based. On appeal we cannot concern ourselves with the judgment of the prosecutor. If the court decided that Raymond Marlow was not an eyewitness, it was not compelled to order his indorsement on the information. The only evidence to substantiate defendant's own testimony placing Raymond Marlow at the scene was the word of defendant's teen-age girl friend whose story did not coincide in certain important details with that of defendant. It is not established upon the record that Raymond Marlow was a *res gestae* witness. It was not error, therefore, to fail to indorse his name upon the information and call him as a *res gestae* witness. Ultimately, of course, it was for the jury to determine against whom force was offered. Considering the diametrically opposed testimony, it is clear from the jury's verdict that the jury did not believe that Raymond Marlow was at the scene of the offense; this Court cannot and will not interfere with any supported factual determination by the jury.

There is reason to believe from the record that although the prosecuting attorney was unaware that the defendant would claim as a defense that his altercation was with Marlow and not Richardson, nevertheless, defense counsel had full knowledge concerning Raymond Marlow's alleged presence at the scene after interviewing his client, Keys, be-

cause that was his whole defense. Yet, counsel for
defense never made a motion to require the indorse-
ment on the information. No motion was ever made
to require the prosecutor to produce Raymond Mar-
low. The defendant never subpoenaed Raymond
Marlow nor called him as a witness in his own be-
half although he had an established right to do so.
Immediately after Brenda McCullough's testimony
which placed Raymond Marlow at the scene, the fol-
lowing colloquy took place out of the hearing of the
jury when counsel approached the bench:

"*Mr. Laster:* I have discussed with counsel rela-
tive to producing the balance of the witnesses listed
on the information, namely David Mason, Merle
Harrington, Glenn Apers, Edward Rea, Robert Carr,
Keith Chesney, Robert Green, Walter Lorkowski,
and Raymond Garstecki. All of these are police
officers.

"*Mr. Polk:* And none of them are eyewitnesses?

"*Mr. Laster:* No eyewitnesses.

"*The Court:* Who is Merle Harrington?

"*Mr. Laster:* He is here. He is the one sitting
there.

"*The Court:* I have a hard time with names. Who
did she say?

"*Mr. Laster:* She said Raymond Marlow.

"*The Court:* Isn't here?

"*Mr. Laster:* No. The husband of Juanita Mar-
low.

"*The Court:* Raymond?

"*Mr. Laster:* Yes.

"*The Court:* Okay.

"*Mr. Polk:* We will waive them.

"*The Court:* Now, when the jury is gone I am
going to ask your client if he waives these people.

"*Mr. Polk:* Yes. I know what you mean.

"*The Court:* All right."

Defendant is precluded by his own express waiver at trial from complaining of any failure to indorse or produce Raymond Marlow.

Where the record fails to affirmatively establish that the prosecuting attorney had any knowledge of the identity of a person alleged to be an eyewitness to the crime, particularly when there has been no conclusive showing on the record that such person was, in fact, a *res gestae* witness and defendant has made no motion to have the alleged witness indorsed upon the information nor called such witness on his own behalf, the failure of the court to order the indorsement on its own motion does not constitute an abuse of judicial discretion. *People* v. *McCrea* (1942), 303 Mich 213, 267–275; *People* v *Kynerd* (1946), 314 Mich 107, 113–116; *People* v. *Bartlett* (1945), 312 Mich 648, 653–656; *People* v. *Jackson* (1947), 318 Mich 506, 508, 509; *People* v. *Mangiapane* (1922), 219 Mich 62, 68; *People* v. *Todaro* (1931), 253 Mich 367, 370; *People* v. *Hoffman* (1908), 154 Mich 145, 147; *People* v. *Keywell* (1931), 256 Mich 139, 141; *People* v. *Hawthorne* (1940), 293 Mich 15, 21; *People* v. *Hallman* (1941), 299 Mich 657, 659, 660; *People* v. *Vick* (1926), 235 Mich 475, 477–480; *People* v. *Dimitroff* (1948), 321 Mich 205, 209, 210.

With respect to the second issue, we hold that the court's instructions were proper. Defendant is charged with feloniously assaulting one Clayton Richardson. The defendant made no claim that he was defending himself against the complaining witness Clayton Richardson.

On the issue of self-defense the trial court instructed the jury as follows:

"Now, if I was armed with a dangerous weapon, a gun, pointed it at a person with the intent to harm him even though I didn't harm him, that would be

assault. That would be felonious assault, assault
with a dangerous weapon.

"That is the issue you have to decide in this case.
That is what the defendant is charged with. And
this is rather important, from the evidence: This
intent and the assault must have been made, if there
was one made—and that is a matter for you—upon
Clayton Richardson. Now, if he pointed a revolver
or shot at anybody else than him, as far as we are
concerned in this particular case, the defendant, you
have to return a verdict of not guilty. Before you
can convict the defendant of this charge you must
find beyond a reasonable doubt that on the day and
date in question the defendant pointed a loaded re-
volver at or in the immediate direction of Clayton
Richardson with the intent to shoot, to hurt him.
Now, that is felonious assault. The people must
prove every essential element of that charge beyond
a reasonable doubt.

"Now, the defendant sort of claims that if he did
shoot he shot in self-defense. But he can't claim
self-defense in this case because he denies he ever
shot in the direction of the complaining witness.
Therefore self-defense would not be available in this
particular case because of the defendant's own con-
tention."

It is a matter of sound logic that if defendant of-
fered force against anyone other than Clayton Rich-
ardson the verdict must be not guilty regardless of
whether defendant offered force in order to defend
himself. After instructing the jury, the trial court
then asked defense counsel, "Are there any further
requests or remarks in relation to my charge, Mr.
Polk?" to which the response was "No request, Your
Honor." Defendant is precluded by court rule from
raising this objection to a jury instruction for the
first time on appeal.

"No party may assign as error the giving or the
failure to give an instruction unless he objects there-

to before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." GCR 1963, 516.2.

An examination of the record and transcript discloses no objection raised by defendant on this point. In open court immediately prior to the conclusion of the trial in response to a query by the court defendant expressly denied any claim of error in the instructions.

Judgment affirmed.

T. G. KAVANAGH, P. J., concurred with VANDER WAL, J.

LEVIN, J. (*dissenting*). Clayton and Elizabeth Richardson learned during the evening of July 11, 1965, that their young grandchildren (the children of Mrs. Richardson's daughter, Jo Anne Julian) were on the street unattended. Searching for the children, Elizabeth Richardson and a daughter-in-law knocked on the door of a neighborhood apartment where the children were last seen. The door was answered by the defendant, John Keys, whom the Richardsons believed to have been "messing around" with Mrs. Julian. Mrs. Richardson testified she greeted the defendant as follows: "Where is my daughter, you black nigger?"[1] Mrs. Richardson and her daughter-in-law, Juanita Marlow, testified the defendant made no audible reply; instead he left the house and headed for a parked automobile.

Mr. Richardson appeared on the street and found his wife "screaming and yelling." He testified:

[1] Neither the children nor Mrs. Julian were with the defendant at the time of the incident.

"I went to the corner and I said, 'Where is John [the defendant] at?' Well, John wasn't there. He had already got out of the house and went inside of a car about three car lengths from where I was standing at and the car was parked and he pulled up to the corner and said, 'Who is looking for John?' I said, 'I am looking for John. I will knock his damn block off.' So he was right there by the corner before you go around the corner, just up to the corner and stop. And he reached by the glove box or something. He pulled out a gun and he said he got something for me and something for my son-in-law.[2] He reached over the top of the girl's[3] arm. My wife said, 'He got a gun.' I didn't see it. So she started running and I backed up and he shot.

"*Q.* How many times?
"*A.* One shot he fired, sir.
"*Q.* And what happened then?
"*A.* Well, he drove away."

There was other testimony that the defendant aimed and fired the gun at Mr. Richardson.

The defendant drove the car; beside him sat Brenda McCullough, who had been babysitting for Mrs. Julian. Miss McCullough testified, contrary to the Richardsons' testimony, that Raymond Marlow, Mrs. Richardson's son, was also present. Marlow, said Miss McCullough, told the defendant "that they had something for him and told him that Dallas [Julian] had a gun and John [the defendant] said, 'Well, that's nothing. I have one too.'" She said that Marlow ran across the street to Mrs. Julian's house and returned with a butcher knife in each hand, whereupon the defendant took the gun out of the glove compartment, fired across her into the air and drove away. Miss McCullough said Mr. Rich-

---

[2] From later testimony it appears the son-in-law referred to was Dallas Julian, husband of Mrs. Julian.
[3] The girl referred to was Brenda McCullough who was in the car beside the defendant.

ardson did not appear until after the gunshot. The defendant, who related fundamentally the same events as Miss McCullough, said he fired the shot because he was "afraid" and "wanted to get away from the corner." He wanted "Raymond and them to know that I had something too."

As the majority opinion notes, the trial judge correctly charged the jury that if it determined the defendant did not feloniously assault Mr. Richardson, it should return a verdict of not guilty, the offense charged being felonious assault against Mr. Richardson. CL 1948, § 750.82 (Stat Ann 1962 Rev § 28.277). The allegation of error concerns the portion of the charge which immediately followed:

"Now, the defendant sort of claims that if[4] he did shoot he shot in self-defense. But he can't claim self-defense in this case because he denies he ever shot *in the direction of the complaining witness.* Therefore self-defense would not be available in this particular case because of the defendant's own contention." (Emphasis supplied.)

The defendant never claimed he fired in self-defense in the direction of Mr. Richardson. The nature of his defense is revealed by his and Miss McCullough's testimony and this portion of the defendant's opening statement:[5]

"at the time that John Keys fired the shot he was not firing at the complainant. He was in fear of his life or injury,—injury, not his life. He was firing to clear the street so he could drive away. If he had not fired he would not have been able to escape and avoid serious consequences for maybe both he and the complainant. And he was actually attempting to escape and it was an act of self-defense."

---

[4] Parenthetically, I note the defendant did not deny shooting the gun. To say "*if* he did shoot" is to suggest that he denied that which he clearly admitted.

[5] The closing jury arguments were not transcribed and were not part of the record on appeal.

Many phrases are used without regard to their origin or literal meaning. For example, "Hobson's choice" is no choice at all, the "lion's share" is not a part but the whole, and so on. Looking beyond our jargon, the gist of "self-defense" is the claim that the defendant's actions were justified under the circumstances in which he acted.

In convicting the defendant, the jury must have concluded he feloniously assaulted Mr. Richardson. The jury should have been instructed that if it reached that conclusion, it must consider the defense of justification before rendering a guilty verdict. That should have been the instruction even though the defendant refused to concede his actions constituted a felonious assault on, or were directed at, Mr. Richardson. Not only did the trial judge fail so to charge, but he also charged that because the defendant refused to admit he fired in the direction of Mr. Richardson the shot admittedly fired, the jury could not consider his defense.

Our Court recently stated on the authority of *People v. Doud* (1923), 223 Mich 120, 129, that in a prosecution for felonious assault with a gun it is not necessary to prove the gun was loaded. *People v. Williams* (1967), 6 Mich App 412, 418. Compare *State v. Herron* (1892), 12 Mont 230 (29 P 819, 30 P 140), adopted in *People v. Doud, supra.* If it were not necessary to prove the defendant's gun was loaded, then the defendant could have been convicted of felonious assault without proof that he fired at all and, likewise, without proof that he fired in the direction of Mr. Richardson. Since he could be convicted without proof he fired in the direction of Mr. Richardson then, contrary to the judge's charge, he need not have admitted he fired in the direction of Mr. Richardson to offer his defense of justification.

The judge's charge that self-defense could not be asserted because the defendant denied shooting in

the direction of Mr. Richardson was palpably wrong. It is clearly incorrect to charge that a defendant may not plead that he acted reasonably under the circumstances if he shoots in the air, but only if he shoots in the direction of his assailant. It was the defendant's duty to use the least force necessary to repel the alleged assault by Mr. Marlow armed with butcher knives.

In finding the defendant feloniously assaulted Mr. Richardson, the jury did not necessarily determine the defendant's actions were not a similar assault upon Mr. Marlow, against whom the defendant and Miss McCullough testified the actions were directed. The jury could have found defendant's actions had been directed at more than one person, and, thus, there is no inconsistency[6] between defendant's assertions that he did not assault Mr. Richardson and that his actions were justified.

Even if the jury believed that Mr. Richardson rather than, or in addition to, Mr. Marlow was at the scene when the gun was fired, it could still properly bring in a verdict of not guilty of felonious assault if it believed the gun was justifiably fired. Defendant need not have abandoned his claim that Mr. Marlow assaulted him, or accepted the Richardson-Marlow version of what occurred, in order to assert that the

---

[6] It has been suggested, and the trial judge must have concluded, there is a logical inconsistency in denying the assault and asserting self-defense. Whether "self-defense" in an assault or any criminal case may be so circumscribed, or whether defendants in criminal cases may plead "inconsistent claims or defenses" either because of GCR 1963, 111.9(2) which expressly provides therefor, or independently thereof, are questions which, in my opinion, need not be reached in order to decide this case. Compare *State* v. *Murphy* (Mo Sup, 1967), 415 SW2d 758, where the defense was alibi and the court held defendant was, nevertheless, entitled to alternative instructions. See GCR 1963, 785: "The provisions of the rules of civil procedure shall apply to criminal cases, except as otherwise provided by rule or statute, and except when it clearly appears that they apply to civil actions only, or where statutes or special court rules provide a different procedure."

shot was justifiably fired.  These disputed questions of fact were for the jury's, not the judge's, resolution.

The charge to the jury that "self-defense would not be available in this particular case," was tantamount to an instruction that the jury could not believe the defendant's and Miss McCullough's testimony.  Defendant claimed he shot the gun into the sky to protect himself from injury and to facilitate a safe retreat.  It is undisputed that the defendant was not the initial aggressor at the time of the incident.  He retreated once in the face of an incendiary expletive.  Whether he was justified in firing the gun, *i. e.*, whether there was an assault against him by either Mr. Richardson or Mr. Marlow, and whether that show of force was necessary to repel it, was for the jury to decide.

In *People* v. *Wright* (1906), 144 Mich 586, 589, 590, the court set aside defendant's conviction of assault with intent to do great bodily harm less than murder and ordered a new trial, holding it was error to instruct the jury that if it should find the complainant had no knife, it must reject the claim of self-defense (p 590):

"The charge was erroneous in making the question of self-defense turn wholly upon the question of whether Penny [the complainant] had a knife.  The rule that the respondent had the right to act upon the circumstances as they reasonably appeared to him was recognized in one portion of the charge, but this portion of the charge ignores this rule."[7]

In this case, one portion of the charge was correct, but the subsequent portion was clearly incorrect because, for all practical purposes, it withdrew the defense offered from the jury's consideration.

[7] Compare *People* v. *Giacalone* (1928), 242 Mich 16, where the Court held the trial court erred in withdrawing from the jury's consideration the defendant's claim of self-defense.

"Where conflicting instructions are given, one erroneous and the other correct, we must presume that the jury followed the erroneous instruction." *People* v. *DeWitt* (1925), 233 Mich 222, 226, quoted approvingly in *People* v. *Kanar* (1946), 314 Mich 242, 253, and *People* v. *Clark* (1954), 340 Mich 411, 418.

The prosecution relies on the failure of defendants' trial counsel to object to the charge, even though given an opportunity to do so. In a number of jurisdictions operating under provisions requiring the trial judge to instruct the jury concerning the law, it has been held that where the defendant raises and supports with evidence the issue of self-defense, the trial judge must correctly charge the jury concerning that issue even if such charge is not requested. *State* v. *Brice* (1939), 190 SC 208 (2 SE2d 391, 392) (constitutional provision); in the following, the provision is statutory: *Collegenia* v. *State* (1913), 9 Okla Crim 425 (132 P 375, 378); *State* v. *Browers* (1947), 356 Mo 1195 (205 SW2d 721, 723); *State* v. *Bryant* (1938), 213 NC 752 (197 SE 530, 533). See, also, *King* v. *Commonwealth* (1920), 187 Ky 782 (220 SW 755, 757) (dictum, but no reference to any statutory or constitutional provision).

In *People* v. *Guillett* (1955), 342 Mich 1, the Court reconciled the following sentences in the governing statute (CL 1948, § 768.29 [Stat Ann 1954 Rev § 28.1052]):

"The court shall instruct the jury as to the law applicable to the case," and
"The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused,"

in these words (p 7): "even with the request absent, a case may still be reversed because the charge omits a legally essential ingredient."

In an early case, the court observed:

"Without any requests from counsel it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he should state to them fully the law applicable to the facts. Especially is this his duty in a criminal case. In this case it was not so done. Too much reliance is often placed upon counsel by the court in this respect for requests; but this should not be done. The court must do its duty in a criminal case, whether counsel do so or not. It is to the court that the accused has a right to look to see that he has a fair trial." *People v. Murray* (1888), 72 Mich 10, 16.

Accord: *People v. Macard* (1888), 73 Mich 15, 26, where the factual dispute concerned, as it does here, self-defense.

In this case, the crux of the entire case was whether the defendant's admitted show of force and firing of the shot was justified. It was of fundamental importance that the trial judge correctly charge on that issue and, therefore, he had a duty to do so without regard to whether there was a request therefor.[8]

Recently in *People v. Liggett* (1967), 378 Mich 706, 714, the Supreme Court ruled that "without a request, a case may be reversed because of an *erroneous* or *misleading* charge," and in determining whether a charge is "erroneous or misleading" a "reasonable doubt" standard is to be applied. (Emphasis supplied.)

The defendant admitted he fired a shot. Under such circumstances it was misleading for the trial judge to advise the jury, first, it could not convict unless it found the shot was in fact fired at Mr.

---

[8] Compare *People v. MacPherson* (1949), 323 Mich 438, 452; *People v. Guillett, supra; People v. Oberstaedt* (1964), 372 Mich 521, 526.

Richardson, or he was otherwise feloniously assaulted, and, second, that the defendant could not claim self-defense because he refused to admit he fired in the direction of Mr. Richardson. The jury was in effect told to reject the defense offered. These instructions were both erroneous and misleading. In my opinion "it has not been demonstrated beyond a reasonable doubt that the trial judge's instructions did not contribute to defendant's conviction." *People* v. *Liggett, supra,* p 717.[9]

I would reverse and order a new trial.

---

[9] See, also, *People* v. *Kanar* (1946), 314 Mich 242, 253, where the court observed: "The rule is well settled in this State that if an erroneous instruction is given on a material matter and the error is not corrected or cured in the charge such error must be regarded as prejudicial."