PEOPLE v COFFEY

1. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—PSYCHOTIC CONDITION.

A confession was properly admitted where the record indicates that the defendant was aware of his actions and the consequences of them in making the confession and was not lacking in understanding of the attendant circumstances, notwithstanding the fact that the defendant might have been psychotic at the time the confession was made.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—FAILURE TO OBJECT—APPEAL AND ERROR.

The failure of defense counsel to object to the instructions given to the jury, where the trial judge gave defense counsel ample opportunity to object, even to the point of soliciting an objection, prevents consideration of those instructions by an appellate court.

3. CRIMINAL LAW—DEFENSES—VOLUNTARY INTOXICATION.

Voluntary drug intoxication is not a defense to a charge of second-degree murder or manslaughter.

Appeal from Wayne, Blair Moody, J. Submitted Division 1 April 5, 1972, at Detroit. (Docket No. 10735.) Decided September 26, 1972.

William H. Coffey was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D.*

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 281.
[2] 53 Am Jur, Trial § 824.
[3] 21 Am Jur 2d, Criminal Law § 109.

*Dockett,* Assistant Prosecuting Attorney, for the people.

*George E. Lee,* for defendant on appeal.

Before: LEVIN, P. J., and BRONSON and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. Defendant was found guilty by a jury of manslaughter, MCLA 750.321; MSA 28.553. He was sentenced to a term in prison of from 8 to 15 years.

The pertinent facts are simply stated. Defendant was found late one night with two small children who were wearing bloodstained clothes. Because of the lateness of the hour, the state of the children's clothes, and confused behavior of defendant, defendant and the children were taken into custody and transported to the Highland Park police station. Because of defendant's confused behavior, he was handcuffed, but he was not formally arrested. At the police station defendant was asked if the police could contact the mother of the children, whereupon defendant blurted out that he had just killed the children's mother. Defendant was immediately advised to say nothing more.

The officers learned of the mother's address from the children, and a scout-car crew was dispatched to the given address. The body of the deceased was discovered by the police, death being from multiple stab wounds.

After being fully advised of his rights, the defendant gave a statement detailing the events of the crime. Briefly stated, defendant indicated that he had quarreled with the deceased, his girlfriend,

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

and had slashed her with a knife from the kitchen table.

Somewhat thereafter defendant was certified by the Center for Forensic Psychiatry as being a "schizophrenic, paranoid type" and incompetent to stand trial. Defendant was referred to the Mental Health Department for treatment. Over a year later defendant was certified competent to stand trial.

A motion to suppress the oral and signed statements made by defendant to the police was made. Pursuant to that motion a *Walker*[1] hearing was held. The thrust of the motion to suppress was directed to the premise that because of defendant's mental state, including narcotic intoxication, he was unable to understand the gravity of his statements, even though informed of his *Miranda* rights by the police. Defendant argues that he comes within the rule enunciated in *Blackburn v Alabama,* 361 US 199; 80 S Ct 274; 4 L Ed 2d 242 (1960).

After an extensive hearing, the trial court determined that the initial statement was a spontaneous utterance by the defendant, and that the defendant was fully apprised of his rights, understood those rights and was aware of the consequence of his statements at the time of the second statement. The court summarized its findings as follows:

"The second statements were made after the rights were explained in very great detail. I don't exactly see how any police could do it in greater detail and fairer, a fair basis. So the question comes, did he know what he was doing at the time? The court believes and concludes that he did and he was aware. He may be psychotic. I am not making any determination on this, but I do

---

[1] *People v Walker,* 374 Mich 331 (On Rehearing, 1965).

believe that he was sufficiently aware at the time that these statements were read to him that he knew and was aware of his rights as they were set forth in the statement, and that he knew what he was doing with relation to making the statement at the time and that he did exercise sufficient control over his speech, over his writing ability, to state and write a confession."

The trial court's determination was based upon three factors. First, the defendant appeared to be calm and rational at the time the statements were made. The record clearly shows that while defendant was extremely agitated when first taken into custody, by the time he was questioned at the station he had calmed down and was lucid and coherent.

The second factor was that the psychiatrist who examined defendant slightly more than a week after the incident concluded at that time that:

"At this time he [defendant] continues to be psychotic but in my opinion he is able to stand trial since he understands the charges placed against him and is able to cooperate with his counsel."

At the *Walker* hearing, the psychiatrist further indicated that the fact that a person was psychotic did not necessarily make such a person unable to manage his own affairs.

The third factor was the testimony of defendant himself. Defendant was able to recall with considerable accuracy all of the details and circumstances surrounding the confession. Defendant admitted that no coercion or duress of any kind was employed by the police officers. During cross-examination of defendant, the following colloquy took place:

"*Q. (By the assistant prosecutor):* And for some rea-

son or another you didn't know what you were doing when you told the officer in charge that you had stabbed Mrs. Franz, is that correct?

*"A.* That isn't what I said that I didn't know what I was doing. I said that I wasn't in, you know, complete control of myself. I wasn't in my right mind.

*"The Court:* You are speaking now of what time, at the time that you made the statement to the officer.

*"The Witness:* Yes."

The standard of review of a *Walker* hearing determination is set forth in *People v Robinson,* 386 Mich 551, 557 (1972):

"The determination of voluntariness is a matter of fact—the ruling of law on the authority of the cases cited is that voluntary statements *etc.* are admissible and involuntary statements *etc.* are not.

"In any event the sole purpose of the *Walker* hearing is to determine the fact of voluntariness and a reviewing court is concerned only with the correctness of that determination. The role of reviewing court is accurately stated in *People v Summers,* 15 Mich App 346, 348 (1968):

" 'On this appeal we are required to "examine the entire record and made an independent determination of the ultimate issue of voluntariness." ' "

In light of the foregoing, our careful review of the record herein persuades us that the trial court's finding is supported by the record. Since defendant admitted he was aware of what was transpiring, this case is distinguishable on the facts from *Blackburn, supra.* While the defendant might well have been psychotic at the time he made his confession, the record in the instant case not only does not demonstrate that defendant was so lacking in understanding of the attendant circumstances as to vitiate the voluntariness of his confession, but rather the record clearly supports the finding that defendant was aware of his ac-

tions and the consequences thereof. The trial court therefore properly allowed the confessions into evidence.[2]

The other issue raised by the defendant concerns the judge's instruction to the jury that voluntary drug use is not a defense to a charge of second-degree murder or manslaughter. An examination of the record indicates that the trial judge gave defendant's counsel ample opportunity to object to the instructions, even to the point of soliciting an objection. Therefore, having been given the opportunity to object to the instructions, failure to do so prevents consideration by this Court. GCR 1963, 516.2; *Hunt v Deming,* 375 Mich 581 (1965); *People v Keys,* 9 Mich App 482 (1968); *People v Keiswetter,* 7 Mich App 334 (1967); *Grassi v Austerberry,* 6 Mich App 690 (1967); *People v Dexter,* 6 Mich App 247 (1967); *Hall v Iosco County Board of Road Commissioners,* 2 Mich App 511 (1966). Further, even if preserved for appellate review, the issue is without merit. Voluntary drug intoxication, like that by alcohol, is not a defense to a charge of second-degree murder or manslaughter. See *People v Garbutt,* 17 Mich 9 (1868); *People v Rufus Williams,* 23 Mich App 459 (1970); see also, *People v Guillett,* 342 Mich 1 (1955); *People v Kelley,* 21 Mich App 612 (1970).

Affirmed.

All concurred.

---

[2] The record in this case is not at all comparable with the record in *People v Stanis,* 41 Mich App 565 (1972), where we held involuntary a confession given after intense questioning by a man who had the level of understanding of a six-to seven-year-old child and who we held did not have the mental capacity to waive his constitutional rights after the *Miranda* warnings were given.